UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRELL GUNN,

                              Plaintiff,

        v.

CORRECTION OFFICER T. MALANI,

                              Defendant.

No. 20-CV-2681 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Darrell Gunn
Ossining, NY
*Pro Se Plaintiff*

Ian Ramage, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Darrell Gunn ("Plaintiff"), proceeding pro se, brings this Complaint, pursuant to 42

U.S.C. § 1983, against Correction Officer ("C.O.") T. Malani ("Defendant"), alleging that

Defendant violated Plaintiff's rights and caused him injury when Defendant lost Plaintiff's

property and caused him to miss a law library callout and court deadline.  (*See* Compl. (Dkt. No.

2).)  Before the Court is Defendant's Motion to Dismiss the Complaint (the "Motion"), filed

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and 42 U.S.C. § 1997e(e).

(*See* Not. of Mot. (Dkt. No. 20).)  For the following reasons, the Motion is granted.

I.  Background

A. Factual Allegations

The following facts are drawn from Plaintiff's Complaint and are assumed true for the purpose of resolving the instant Motion.

The events giving rise to this Action took place while Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven").  (Compl. ¶ 4.)[1]  On June 17, 2017, Plaintiff was transferring his property from one cell to another during a cell move.  (Id. ¶ 10.)  An unnamed prison guard said to Plaintiff, "[P]lace [all your] property in your cell after the count.  I understand you're cleaning and sanitizing your cell." (Id. ¶ 11.)  Plaintiff placed five bags of property in front of his cell "[a]t [the] prison guard's direction."  (Id.)  According to the Complaint, Defendant then said to Plaintiff, "[Y]ou write grievances!  I'm going to take your property!  Unless you can give me a good reason why I should give it back by the time I'm done taking it.  It's a fire hazard!  You were told to put it in your cell." (Id. ¶ 13.)  Plaintiff alleges that Defendant "negligently and carelessly lo[st] [P]laintiff['s] property and damag[ed] the property." (Id. ¶ 12.)  Shortly thereafter, Defendant allegedly placed Plaintiff on keep lock, stating, "[Y]ou write grievances.  You are keep locked!" (Id. ¶ 14–15.)  Further, Plaintiff was

---

[1] The Court notes that there is some ambiguity in the Complaint regarding where Plaintiff was incarcerated at the time of the alleged incident.  Plaintiff states that he was incarcerated at Sing Sing Correctional Facility ("Sing Sing") at all times relevant to the events alleged in the Complaint, (id. ¶ 4), but Plaintiff also alleges that Defendant was assigned to Green Haven at all relevant times, (id. ¶ 5).  Plaintiff later mentions "us[ing] the prisoner grievance procedure at . . . Green Haven" to resolve the issues that arose from the alleged incident.  (Id. ¶ 21.)  Similarly, the Defendant states in his Memorandum that Plaintiff was incarcerated at Green Haven at the time of the events in the Complaint.  (See Def.'s Mem. in Supp of Mot. To Dismiss ("Def.'s Mem.") 1 (Dkt. No. 21).)  Plaintiff lists Sing Sing as the return address on all of his correspondence with the Court.  (See Dkt. Nos. 1, 2, 5, 25-1.)  The Process Receipt and Return of Service lists the Defendant's address as Green Haven and the Plaintiff's address as Sing Sing. (See Dkt. No. 13.)  The Court will assume for purposes of this Motion that Plaintiff is currently incarcerated at Sing Sing but that the events alleged in the Complaint occurred at Green Haven.

allegedly "denied his scheduled law library [callout] . . . caus[ing] [him] to miss [a] court deadline." (*Id.* ¶ 16–17.)  As a result, Plaintiff suffered "undue incredible hardships," including "worrying, [a] high level of stress, agony, anxiety, anger, degradation, dehumanization, depression, paranoia, injustice, [hopelessness and] despair." (*Id.* ¶ 19.)

A short time later, Plaintiff "used the prisoner grievance procedure at Green Haven . . . to try to solve the problem." (*Id.* ¶ 21.)  "On June 29, 2017[,] [P]laintiff . . . presented the facts relating to his complaint." (*Id.*)[2]  On August 11, 2017, Plaintiff learned that the grievance had been denied. (*Id.*)  On August 18, 2017, Plaintiff "appealed the denial of the grievance #GH-86981-17 consolidated."[3]  (*Id.*)  The Complaint does not contain any allegations relating to the resolution of this appeal.

B. Plaintiff's Causes of Action

Plaintiff lists several causes of action in his Complaint, which alleges violations of the First Amendment, Fifth Amendment, and Fourteenth Amendment to the U.S. Constitution. (*See id.* ¶ 24.)  The Court construes them as follows.  First, Plaintiff alleges that Defendant lost and damaged his property, which he was unable to resolve through the grievance process. (*Id.* ¶¶ 10–13, 21.)  Second, Plaintiff alleges that Defendant violated Plaintiff's right of access to the courts by denying his scheduled law library callout, causing him to miss a court deadline. (*Id.* ¶¶ 16–17.)  Third, Plaintiff appears to allege that Defendant retaliated against him for his filing of grievances by losing/damaging his property, placing him on keep lock, and denying his law library callout. (*Id.* ¶¶ 10–17.)

---

[2] The Court will assume that this refers to a hearing pertaining to Plaintiff's grievance.

[3] The subjects of Plaintiff's other grievances that were allegedly consolidated into grievance #GH-86981-17 are not clear from the Complaint.

Plaintiff sues Defendant in his official and individual capacities.  (*Id.* ¶ 7.)  Plaintiff demands a jury trial and seeks compensatory damages of $55,000, punitive damages of $100,000, as well as Plaintiff's costs in this Action.  (*Id.* ¶¶ 29–32.)

C.  Procedural History

Plaintiff filed his Complaint on March 30, 2020.  (Dkt. No. 2.)[4]  On June 25, 2020, the Court granted Plaintiff leave to proceed in forma pauperis.  (Dkt. No. 6.)  On January 22, 2021, Defendant requested an extension of time to respond to the Complaint, (Dkt. No. 10), which the Court granted on January 25, 2021, (Dkt. No. 11).  On March 15, 2021, Defendant requested a second extension of time to respond to the Complaint, (Dkt. No. 14), which the Court granted the next day, (Dkt. No. 15).[5]  On April 5, 2021, Defendant filed a pre-motion letter outlining the grounds for his proposed motion to dismiss.  (Dkt. No. 18.)  The same day, the Court adopted a briefing schedule for the Motion.  (Dkt. No. 19.)  Defendant filed the instant Motion and supporting papers on May 5, 2021.  (Dkt. Nos. 20–21.)  On May 13, 2021, Defendant requested that his time to respond to Local Civil Rule 33.2 be stayed until 30 days after the Court issues a decision on the instant Motion.  (Dkt. No. 22.)  The Court granted this request on May 14, 2021.  (Dkt. No. 23.)  On June 18, 2021, Defendant filed a letter it received from Plaintiff, which contained Plaintiff's Opposition to Defendant's Motion.  (Dkt. Nos. 25, 25-1.)[6]  Also on June 18, 2021, Defendant filed a Reply.  (Dkt. No. 26.)

---

[4] The Complaint is dated March 20, 2020, but it was filed to the docket on March 30, 2020.  (*See* Dkt.)

[5] The Court's memo endorsement is dated March 15, 2021, but it was filed to the docket on March 16, 2020.  (*See* Dkt.; Dkt. No. 15.)

[6] Plaintiff's letter is dated May 16, 2021, and Defendant received it on May 25, 2021.  (*See* Dkt. Nos. 25, 25-1.)

4

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir.), *cert. denied*, 540 U.S. 1012 (2003)).

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation and quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be either "facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations omitted) (quoting

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor.  *Id*. at 57.  However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial.  *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017).  If the extrinsic evidence presented by the defendant is material and controverted, the Court must "make findings of fact in aid of its decision as to standing."  *Carter*, 822 F.3d at 57.

### 2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see*

*also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in

response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation and quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics, citation and quotation marks omitted)).

B. Analysis

  1.  Loss of Property

Plaintiff asserts a claim against Defendant for loss and damage of property.  (Compl.  ¶¶ 10–13.)  However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of . . . the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470, at *13 (S.D.N.Y. Sept. 29, 2014) (same), *appeal dismissed*, No. 14-3839 (2d Cir. Jan. 8, 2015).  In fact, "the state's action is not complete

until and unless it provides or refuses to provide a suitable post[-]deprivation remedy." *Acevedo*, 2014 WL 5015470, at *13 (quoting *Hudson*, 468 U.S. at 533).  In applying this doctrine, "the Second Circuit has determined that 'New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action.'" *Id.* (italics omitted) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)); *see also Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317, at *11 (S.D.N.Y. Aug. 15, 2012) ("New York provides such an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, and conversion." (collecting cases)), *report and recommendation adopted*, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012).  "District courts thus routinely dismiss claims by inmates who assert that they were deprived of property by corrections officers in New York." *Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *7 (S.D.N.Y. Sept. 25, 2020) (quotation marks and citation omitted); *see also Davis v. Collado*, No. 16-CV-7139, 2018 WL 4757966, at *16 (S.D.N.Y. Sept. 30, 2018) (collecting cases); *JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *32 (S.D.N.Y. Apr. 24, 2014) (dismissing an inmate's deprivation of property claim because "the existence of an adequate post-deprivation state remedy precludes a due process claim under § 1983" (citations omitted)), *report and recommendation adopted*, 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Green v. Niles*, No. 11-CV-1349, 2012 WL 987473, at *6 (S.D.N.Y. Mar. 23, 2012) (dismissing an inmate's claim because "a prison's loss of an inmate['s] property . . . will not support a due process claim redressable under § 1983 if adequate state post-deprivation remedies are available" (citation and quotation marks omitted)).

Here, the Complaint includes the allegation that Defendant "confiscated, damaged, and destroyed" Plaintiff's property.  (Compl. ¶ 15.)  Plaintiff cannot sustain a § 1983 claim based on the deprivation of his personal property alone.  *See Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir.

1988) (noting that the "mere deprivation of personal property would not rise to the level of a constitutional injury" (citation omitted)).  This claim is therefore dismissed.

    2.  Denial of Access to Law Library and the Courts

It is axiomatic that prisoners "have a constitutional right of access to the courts," *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quotation marks omitted), and that pro se inmates have a right to assistance in the form of "adequate law libraries or adequate assistance from persons trained in the law," *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  However, impairment of an inmate's "litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Pollack v. Holanchock,* No. 10-CV-2402, 2012 WL 1646893, at *2 (S.D.N.Y. May 10, 2012) (quotation marks omitted); *see also Razzoli v. Exec. Office of U.S. Marshals*, No. 10-CV-4269, 2010 WL 5051083, at *3 (E.D.N.Y. Dec. 2, 2010) (noting that "the Constitution does not require unlimited and unsupervised access to a law library at the demand of a prisoner," and that "[p]rison officials may impose reasonable restrictions on the use of a prison law library") (collecting cases); *Jermosen v. Coughlin*, No. 89-CV-1866, 1995 WL 144155, at *5 (S.D.N.Y. Mar. 30, 1995) ("[I]nterferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right.").

    "To establish a constitutional violation based on denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (quotation marks omitted); *see also Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) ("In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, i.e., took or was responsible for actions

that hindered a plaintiff's efforts to pursue a legal claim." (alterations, citations, italics, and quotation marks omitted)); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (same).  For example, a plaintiff could show that he "has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality" as a result of the actions of the defendant.  *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001); *see also Little v. Mun. Corp., City of New York*, No. 12-CV-5851, 2017 WL 1184326, at *9 (S.D.N.Y. Mar. 29, 2017).

Here, Plaintiff alleges that Defendant caused him to miss a scheduled evening library callout, which in turn caused Plaintiff to miss a court deadline.  (Compl. ¶¶ 16–17.)  Specifically, Plaintiff states that he "missed [a] 90[-]day NYS Court of Claim deadline to file [a] notice of intention in *Darrell Gunn v. State of New York* Motion Number M-95057."  (Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") 2 (Dkt. No. 25-1) (italics added)).  However, Plaintiff does not provide any additional detail outlining how or why missing one evening library callout caused him to miss a court deadline—particularly one that was 90 days long.  Nor does Plaintiff allege whether there were any legal consequences that resulted from him missing the deadline to file his notice of intention.  Plaintiff has failed to allege actual injury, and he therefore lacks standing to assert a denial of access claim.  *See Lewis v. Westchester Cty.*, No. 18-CV-04086, 2020 WL 5535374, at *7 (S.D.N.Y. Sept. 14, 2020) (dismissing denial of access to the courts claim where [the] plaintiff's allegations were "sparse, conclusory and fail[ed] to allege any injury); *Odom v. Poirier*, No. 99-CV-4933, 2004 WL 2884409, at *9 (S.D.N.Y. Dec. 10, 2004) (dismissing denial of access claim where the plaintiff failed to "sufficiently allege how [the defendants'] conduct materially prejudiced any existing legal action."); *Gill v. Pact Org.*, No. 95-CV-4510, 1997 WL 539948, at *5 (S.D.N.Y. Aug. 28, 1997) (dismissing denial of access claim where the plaintiff "[did] not show[] that he sustained a dismissal of, or suffered any prejudice

to, a lawsuit."). Thus, this claim is dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint, he must allege some legal consequence from missing the court deadline.

### 3. Retaliation

"Prisoners have a constitutional right to petition the government, and it is a violation of § 1983 for prison officials to retaliate against prisoners for the exercise of that right." *Perkins v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at *13 (S.D.N.Y. Mar. 18, 2019) (quotation marks and citation omitted). To state a First Amendment claim of retaliation, an inmate must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the [inmate], and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation, alteration, and quotation marks omitted).

"[T]he filing of prison grievances is . . . constitutionally protected." *Davis*, 320 F.3d at 352; *see also Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Franco*, 854 F.2d at 589–90. Indeed, "[i]t is well-established that inmates' filing of grievances is . . .[an] exercise of their right under the First Amendment to petition the government for the redress of grievances." *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *4 (S.D.N.Y. July 16, 2013); *see also Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *10 (S.D.N.Y. Sept. 28, 2018) (same); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 367, 367 n.21 (S.D.N.Y. 2011) (same; collecting cases). Here, Plaintiff claims that Defendant lost and damaged Plaintiff's property and placed him on keep lock—thereby causing him to miss his scheduled evening library callout, which in turn caused him to miss a court deadline—in retaliation for filing grievances. (*See* Compl. ¶¶ 13–17.) Plaintiff therefore meets the first prong of the test.

An adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353 (quotation marks and citation omitted).  In determining whether a prison official's conduct constitutes adverse action, "the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens." *Id.* (alterations, citation, and quotation marks omitted).  "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed that district courts must "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation and quotation marks omitted); *see also Graham*, 89 F.3d at 79 ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike.") (citation and quotation marks omitted)).  Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations" and not stated in "wholly conclusory terms." *Dolan*, 794 F.3d at 295 (citation and quotation marks omitted); *Tutora v. Gessner*, No. 17-CV-9517, 2019 WL 1382812, at *6 (S.D.N.Y. Mar. 27, 2019) (same).

Plaintiff's claims are neither specific nor detailed.  It is unclear from the Complaint whether Plaintiff actually filed any prior grievances, or whether Defendant was in any way implicated by any prior grievances filed by Plaintiff.  The Complaint alleges that while Plaintiff "was transferring his property from one cell to another during [P]laintiff's cell move," (Compl. ¶ 10), Defendant "los[t]" and "damage[ed]" Plaintiff's property, (*id.* ¶ 12).  The Complaint also alleges that Defendant stated, "[Y]ou write grievances!  I'm going to take your property!",  (*id.* ¶

13), and "[Y]ou write grievances. You are keep locked!", (*id.* ¶ 14).  Plaintiff's allegations are

bare and conclusory.  Without more, Plaintiff cannot plausibly allege that Defendant took

adverse action against him.  *See, e.g.*, *Tutora*, 2019 WL 1382812, at *6 (dismissing retaliation

claim where "the [a]mended [c]omplaint contain[ed] insufficiently specific and detailed factual

material to make out a First Amendment claim based on retaliatory threats."); *accord Terry*,

2018 WL 4682784, at *11 (granting summary judgment and dismissing retaliation claim where

plaintiff "provided minimal detail about the actual actions purportedly taken against him."

(citation and quotation marks omitted)).

Even if Plaintiff could satisfy the adverse action prong, he cannot satisfy the causation

prong.  In order to show causation, the allegations must be "sufficient to support the inference

that the speech played a substantial part in the adverse action."  *Diesel v. Town of Lewisboro*,

232 F.3d 92, 107 (2d Cir. 2000) (quotation marks and citation omitted).  Factors considered in

evaluating whether causation existed include: (1) the temporal proximity of the filing to the

grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3)

vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive

for disciplining the plaintiff."  *Thomas v. DeCastro*, No. 14-CV-6409, 2019 WL 1428365, at *9

(S.D.N.Y. Mar. 29, 2019) (citation omitted).

Here Plaintiff's allegations fail to satisfy the causation factors as articulated in *Thomas*.

First, Plaintiff has made no allegations relating to the temporal proximity between his filing of

grievances—if any were in fact filed—and Defendant's actions.  Second, Plaintiff did not

disclose *any* details regarding his prior disciplinary record while incarcerated—much less

allegations regarding his good disciplinary record.  Third, with regard to vindication, Plaintiff

has made the opposite allegation—that his grievance was in fact *denied* at a hearing on the

matter.  (Compl. ¶ 21.)  Fourth and finally, although Plaintiff alleged that Defendant stated,
"[Y]ou write grievances. I'm going to take your property!", (*id.* ¶ 13), and "[Y]ou write
grievances. You are keep locked!", (*id.* ¶ 14), Plaintiff provides no context for these statements
such that the Court can infer a retaliatory motive behind Defendant's actions.  In fact, Plaintiff
does not provide any information at all about the prior grievances, including whether those
grievances even pertained to Defendant.  Indeed, simply "repeatedly assert[ing] that [the
plaintiff's] perceived mistreatment is a result of retaliatory animus on the part of the
defendant[]," without "any specific and detailed factual allegations to support that assertion," is
insufficient to establish a causal connection.  *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517
(S.D.N.Y. 2012) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000);
*Bouknight v. Shaw*, No. 08-CV-5187, 2009 WL 969932, at *6 (S.D.N.Y. Apr. 6, 2009) (finding
plaintiff's allegation that the defendant "wrote [him] up for revenge" was "mere speculation" and
therefore insufficient to plausibly establish "the requisite causal connection" (citation and
quotation marks omitted)).

Because Plaintiff cannot satisfy the adverse action or causation requirements of his
retaliation claim, his retaliation claim is dismissed.

### 4.  Official Capacity

Defendant argues that "[a]ll of Plaintiff's claims for damages against Defendant in his
official capacity are barred by the Eleventh Amendment."  (Def.'s Mem. 6.)  The Court agrees.

"[A]s a general rule, state governments may not be sued in federal court unless they have
waived their Eleventh Amendment immunity, or unless Congress has abrogated the states'
Eleventh Amendment immunity."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation
and quotation marks omitted).  New York has not waived its Eleventh Amendment immunity to

suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. §
1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977);
*Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021). "The
immunity recognized by the Eleventh Amendment extends beyond the states themselves to state
agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F. 3d at
366. The Eleventh Amendment therefore also bars the claims for damages against the individual
defendants in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985);
*Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state
official is sued for damages in his official capacity, such a suit is deemed to be a suit against the
state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the
state."), *aff'd*, 589 F. App'x 28 (2d Cir. 2015); *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp.
3d 420, 436 (S.D.N.Y. 2017); *Perciballi v. New York*, No. 09-CV-6933, 2010 WL 3958731, at
*4 (S.D.N.Y. Sept. 28, 2010). Thus, all claims filed against Defendant in his official capacity are
dismissed.

     5.  Qualified Immunity

     Defendant also argues that C.O. Malani "is entitled to qualified immunity." (Def.'s
Mem. 8.) "The doctrine of qualified immunity protects government officials from liability for
civil damages insofar as their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*,
555 U.S. 223, 231 (2009) (quotation marks omitted). Qualified immunity shields a defendant
from standing trial or facing other burdens of litigation "if either (a) the defendant's action did
not violate clearly established law, or (b) it was objectively reasonable for the defendant to

believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239
F.3d 246, 250 (2d Cir. 2001) (quotation marks omitted).

The Supreme Court has held that when evaluating an asserted qualified immunity
defense, a court may begin by examining whether a reasonable officer in Defendant's position
would have believed his or her conduct would violate the asserted constitutional right. *See
Pearson*, 555 U.S. at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), and explaining that
judges are no longer required to begin by deciding whether a constitutional right was violated but
are instead "permitted to exercise their sound discretion in deciding which of the two prongs of
the qualified immunity analysis should be addressed first"). The Supreme Court has further
instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable
official would [have understood] that what he is doing violates that right. In other words,
existing precedent must have placed the statutory or constitutional question beyond debate."
*Reichle v. Howards*, 566 U.S. 658, 664 (2012) (second alteration in original) (citations and
quotation marks omitted). Furthermore, "the right allegedly violated must be established, not as
a broad general proposition, but in a particularized sense so that the contours of the right are
clear to a reasonable official." *Id.* at 665 (citations and quotation marks omitted). Otherwise
stated, to determine whether a right is clearly established, courts must determine "whether (1) it
was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed
the existence of the right, and (3) a reasonable defendant would have understood that his conduct
was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

Given that "qualified immunity is not only a defense to liability, but also provides
immunity from suit," a court should resolve a "defendant's entitlement to qualified
immunity . . . 'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576

17

(2d Cir. 2016) (quoting *Pearson*, 555 U.S. at 231–32).  "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion," but a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if "the facts supporting the defense appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (italics omitted).  As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."  *Id.* at 436 (quotation marks omitted).

Here, Defendant argues that he is entitled to qualified immunity because "Plaintiff has not alleged facts sufficient to show that Defendant violated Plaintiff's constitutional rights and, by definition, has not alleged the violation of a right that was clearly established at the time of the alleged incident."  (Def.'s Mem. 8.)  However, in this situation, where the Complaint lacks sufficiently detailed allegations regarding Defendant's actions, it is inappropriate rule on the issue of qualified immunity until the Court has a more developed factual record to consider.  *See Kaplan v. Cty. of Orange*, No. 20-CV-1382, 2021 WL 1105618, at *13 (S.D.N.Y. Mar. 23, 2021) (declining to grant motion to dismiss based on qualified immunity where there was insufficient information to determine whether the conduct of individual defendants was protected by qualified immunity); *see also Selinger v. City of New York*, No. 08-CV-2096, 2009 WL 1883782, at *6 (S.D.N.Y. June 30, 2009) (same); *Kanciper v. Lato*, 989 F. Supp. 2d 216, 232–33 (E.D.N.Y. 2013) (denying motions to dismiss on the basis of qualified immunity where "there [was] simply insufficient information at th[at] early stage to determine whether the [defendant's] conduct . . . [was] protected by qualified immunity" (citation omitted)); *Anilao v. Spota*, 774 F. Supp. 2d 457, 493 (E.D.N.Y. 2011) ("[W]hile the [c]ourt . . . recognizes that the qualified

immunity issue should be decided at the earliest juncture where possible, the [c]ounty

defendants' motion to dismiss plaintiffs' claims on the basis of qualified immunity is denied,

given the allegations in the complaint."); *Bostic v. City of Binghamton*, No. 06-CV-540, 2006

WL 2927145, at \*4 (N.D.N.Y. Oct. 11, 2006) ("[T]h[e] determination [of whether defendants

were entitled to qualified immunity] will have to await a summary judgment motion or trial.").

Accordingly, the Court declines to address the issue of qualified immunity at this early stage in

the litigation.

###### 6.  Physical Injury

Defendant next argues that § 1997e(e) of the Prison Litigation Reform Act ("PLRA")

bars Plaintiff's claims because he "cannot recover for . . . mental distress injuries without a prior

showing of physical injury."  (Def.'s Mem. 9).  Section 1997e(e) of the PLRA states: "No

Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing of

physical injury."  42 U.S.C. § 1997e(e).  Although "[b]y its terms, [§ 1997e(e)] does not limit the

prisoner's right to request injunctive or declaratory relief," *Thompson v. Carter*, 284 F.3d 411,

418 (2d Cir. 2002), the Second Circuit has held that "[§] 1997e(e) applies to claims in which a

plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental

or emotional injury for a constitutional violation in the absence of a showing of actual physical

injury," *id.* at 417; *see also Clay v. Lee*, No. 13-CV-7662, 2017 WL 436041, at \*8 (S.D.N.Y.

Jan. 30, 2017); *Dillon v. City of New York*, No. 12-CV-7113, 2013 WL 6978959, at \*2 (S.D.N.Y.

Nov. 18, 2013).  Indeed, "[c]ourts have consistently held that [§] 1997e(e) bars prisoner civil

rights suits seeking damages for constitutional violations where the inmate-plaintiff suffers only

emotional and mental injury."  *Cox v. Malone*, 199 F. Supp. 2d 135, 139 (S.D.N.Y. 2002), *aff'd*,

19

56 F. App'x 43 (2d Cir. 2003); *accord Greene v. Dep't of Corr.*, No. 10-CV-5344, 2012 WL 694031, at *3 (S.D.N.Y. Mar. 5, 2012) ("Cases asserting emotional harm, unaccompanied by a claim of physical harm, are routinely dismissed [under § 1997(e)]."). "Additionally, while 'physical injury' is not statutorily defined, the injury an inmate alleges must be more than de minimis to meet the requirements of the PLRA." *Dillon*, 2013 WL 6978959, at *2 (citing *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir.1999)).

Here, Plaintiff alleges various emotional and mental injuries. Specifically, Plaintiff alleges that he suffered "undue incredible hardships," including "worrying, [a] high level of stress, agony, anxiety, anger, degradation, dehumanization, depression, paranoia, injustice, hopelessness [sic], [and] despair." (Compl. ¶ 19.) However, Plaintiff has made no mention of any physical injury. In the absence of alleging physical injury, Plaintiff cannot recover the compensatory and punitive damages he seeks.

7. State Law Claims

Finally, Defendant argues that any state claims Plaintiff attempts to make against Defendant "must be brought as a claim against the State itself in the New York Court of Claims, (Def.'s Mem. 9), and are thus barred by New York Correction Law § 24, *see* N.Y. Correct. Law § 24. Because Plaintiff has only alleged violations of his civil rights under the First, Fifth and Fourteenth Amendments, (Compl. ¶ 24), the Court does not interpret the Complaint to raise any state law claims.[7] However, to the extent Plaintiff did intend to assert state law claims,

---

[7] The Court notes that Plaintiff makes a reference to a New York regulation in the Complaint. (Compl. ¶ 20 (citing 7 N.Y.C.R.R. § 251-1.6(e)(1)).) This section provides, "An employee who places an inmate in confinement in his cell or room or who places an inmate in a special housing unit pursuant to the provisions of this section shall report such fact, in writing, to the superintendent as soon as possible, but in any event before going off duty." 7 N.Y.C.R.R. § 251-1.6(e)(1). Plaintiff does not allege any facts relevant to whether Defendant reported Plaintiff's confinement to the superintendent. In any event, Plaintiff alleges that Defendant's

Defendant is correct that such claims are barred by New York Correction Law § 24, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee."  N.Y. Correct. Law § 24; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court).  "Courts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment."  *Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) (collecting cases).  Defendant clearly acted within the scope of his employment, as his actions as alleged in the Complaint "arose as a result of the [D]efendant[] discharging [his] duties as [a] correctional officer[]."  *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994).  Further, "there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983."  *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quotation marks omitted).  Thus, any state law claims Plaintiff attempts to bring are barred.

### III. Conclusion

For the reasons stated above, the Court grants Defendants' Motion To Dismiss.  In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice.  If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  The new amended

---

violation of  7 N.Y.C.R.R. § 251-1.6(e)(1) "caus[ed] [P]laintiff's civil rights being infringed upon."  (Compl. ¶ 20.)  The Court therefore construes this allegation as a further claim of civil rights violations under 42 U.S.C. § 1983, and not as a separate state law claim.

complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. Failure to properly and timely amend will likely result in dismissal of the claims against Defendant with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 20), and to mail a copy of this Opinion & Order to Plaintiff.


SO ORDERED.

DATED:        November 23, 2021
              White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE