UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DARRELL GUNN,

                              Plaintiff,

        v.

CORRECTION OFFICER T. MALANI,

                              Defendant.

No. 20-CV-2681 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Darrell Gunn
Ossining, NY
*Pro Se Plaintiff*

Ian Ramage, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Darrell Gunn ("Plaintiff"), proceeding pro se, brings this Amended Complaint, pursuant

to 42 U.S.C. § 1983, against Correction Officer Thomas Milani ("Defendant"), alleging that

Defendant violated Plaintiff's rights and caused him injury when Defendant lost Plaintiff's

property and caused him to miss a law library callout and court deadlines.  (*See* Am. Compl.

(Dkt. No. 28).)[1]  Before the Court is Defendant's Motion to Dismiss the Amended Complaint

(the "Motion"), filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and 42

---

[1] Plaintiff has brought suit against Defendant "T. Malani," (*see generally* Am. Compl.) but Defendant has indicated that the proper spelling of his name is "Milani."  (*See* Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") 7 (Dkt. No. 35).)

U.S.C. § 1997e(e).  (*See* Not. of Mot. (Dkt. No. 34).)  For the following reasons, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Allegations

The following facts are drawn from Plaintiff's Amended Complaint and are assumed true for the purpose of resolving the instant Motion.

The events giving rise to this Action took place while Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven").  (Am. Compl. at 2.)

On June 1, 2017, Plaintiff was transferring his property from one cell to another during a cell move.  (*Id.* ¶ 1.)  An unnamed prison guard said to Plaintiff, "[P]lace your property in your cell after the count.  I understand you're cleaning and sanitizing your cell."  (*Id.* ¶ 2.)  Plaintiff placed five bags of property in front of his cell "[a]t [the] prison guard's direction."  (*Id.*)  Defendant then said to Plaintiff, "[Y]ou write grievances!  I'm going to take your property!  Unless you can give me a good reason why I should give it back by the time I'm done taking it.  It's a fire hazard!  You were told to put it in your cell."  (*Id.* ¶ 4.)  Plaintiff alleges that Defendant "negligently and carelessly lo[st] [P]laintiff['s] property and damage[ed] the property."  (*Id.* ¶ 3.)[2]  Shortly thereafter, Defendant allegedly placed Plaintiff on keep lock, stating, "[Y]ou write grievances!  You are keeplocked!"  (*Id.* ¶ 5.)

---

[2] Plaintiff also alleges that within 24 hours of arriving at Green Haven, Plaintiff was "set-up with a weapon . . . by brazen correction officers."  (Am. Compl. ¶ 21.)  According to Plaintiff, "[t]he paperwork [related to this incident] was destroyed" by Defendant.  (*Id.*)  However, Plaintiff does not provide any indication that he suffered any Constitutional deprivation as a result of either the alleged "set-up" or the destruction of the paperwork, so the Court will not further address these allegations.

Plaintiff claims that Defendant took these actions in retaliation for Plaintiff filing a grievance against other officers concerning the loss of a package on May 25, 2017 and for Plaintiff's practice of "filing . . . grievances against . . . prison guards and prison staff . . . ." (*Id.* ¶¶ 8, 18, 28.)  However, Defendant "was not implicated in any prior grievances" he had filed. (*Id.* ¶ 18.)

While on keep lock, Plaintiff "miss[ed] his law library callout [sic] . . ." (*id.* ¶ 17), which caused him to be "take[n] off the [law library] rotation[,] [r]esulting in months [of delay] to receive another law library callout," (*id.* ¶ 15).  Because of the missed library callouts, Plaintiff failed to meet deadlines in federal and state court cases.  (*Id.* ¶¶ 13–14, 29–30.)

Plaintiff "used the prisoner grievance procedure at Green Haven . . . to try and solve the problem." (*Id.* ¶ 23.)  "On June 29, 2017[,] [P]laintiff . . . presented the facts relating to this [C]omplaint." (*Id.*)  "On July 5, 2017[,] [P]laintiff . . . [again] presented the facts relating to this [C]omplaint." (*Id.* ¶ 24.)  On August 11, 2017, Plaintiff was sent a response stating that both grievances had been denied.  (*Id.* ¶¶ 23–24.)  On August 18, 2017, Plaintiff "appealed the denial of the grievance #GH-86981-17 consolidated." (*Id.* ¶¶ 23–24.)[3]  The Amended Complaint does not contain any allegations related to the resolution of his appeal, but Plaintiff alleges that during the appeal Defendant "denie[d] being unprofessional [or] confiscating or damaging [Plaintiff's] property or confining him to cell at any time." (*Id.* ¶ 9.)  Additionally, Plaintiff claims that the "Inmate Grievance Program System" is "rigged." (*Id.* ¶ 12.)

---

[3] The subjects of Plaintiff's other grievances that were consolidated into grievance #GH-86981-17 are not clear from the Complaint.

As a result of these events, Plaintiff suffered "undue incredible hardships," including "worrying, loss of appetite, high levels of stress, agony, anxiety, anger, degradation, depression, dehumanization, paranoia, injustice, hopelessness, [and] despair." (*Id.* at ¶ 32.)

B. Plaintiff's Causes of Action

Plaintiff lists several causes of action in his Amended Complaint, which alleges violations of the "First Amendment, Fifth Amendment, and Fourteenth Amendment" to the U.S. Constitution. (*See id.* ¶¶ 25, 31.) The Court construes them as follows. First, Plaintiff alleges that Defendant lost and damaged his property, an incident which he was unable to resolve through the filing of a grievance. (*Id*. ¶¶ 1–5, 7–11.) Second, Plaintiff alleges that Defendant violated his right of access to the courts by denying Plaintiff's scheduled law library callout and causing Plaintiff to lose his spot in the law library rotation, which resulted in Plaintiff missing two court deadlines. (*Id*. ¶¶ 13–17, 29–30.) Third, Plaintiff alleges that Defendant retaliated against him for filing grievances by losing or damaging his property, placing him on keep lock, and denying his law library callout. (*Id*. ¶¶ 8, 18, 28.)

Plaintiff demands a jury trial and seeks compensatory damages of $55,000, punitive damages of $100,000, as well as Plaintiff's costs in this Action. (*Id.* ¶¶ 29–32.) Plaintiff also requests that the Court "permanently enjoin defendants [sic][,] their assistants[,] successors[,] and persons acting in concert [or] cooperation with them from further violating" his "rights [and] privileges and the Constitution of the United States." (*Id.* at 17.)

C.  Procedural History

The Court summarized the procedural background of this Action in its November 23, 2021 Opinion dismissing Plaintiff's Complaint. (*See* Op. & Order (Dkt. No. 27).) The Court assumes familiarity with this history and reviews only subsequent proceedings.

Plaintiff filed his Amended Complaint on December 27, 2021.  (*See* Am. Compl.)  On March 14, 2022, after requesting and receiving a single extension (*see* Dkt. Nos. 29, 30), Defendant filed his Motion to Dismiss and accompanying papers, (*see* Not. of Mot.; Def.'s Mem.).  On May 3, 2022, Defendant submitted a letter requesting that the Court consider the Motion to Dismiss fully submitted because Plaintiff had failed to submit an opposition or request an extension before the deadline to respond.  (*See* Letter from Ian Ramage, Esq. to Court (May 3, 2022) 1 (Dkt. No. 36).)  The Court granted this request on May 4, 2022.  (*See* Dkt. No. 37.)

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question").

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing. *See Carter*, 822 F.3d at 57.

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and

quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317

(S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may

consider "materials outside the complaint to the extent that they are consistent with the

allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4

n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se

litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at

*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in

response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of

Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents

either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in

bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation

marks omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544,

1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's]

[complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."

*Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with

relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*,

517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves

regarding procedural rules and to comply with them." (italics and citation omitted)).

B. Analysis

    1.  Loss of Property

Plaintiff asserts a claim against Defendant for loss and damage of property.  (Am. Compl. ¶¶ 3, 6, 9.)  However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of . . . the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470, at *13 (S.D.N.Y. Sept. 29, 2014) (same), *appeal dismissed*, No. 14-3839 (2d Cir. Jan. 8, 2015).  In fact, "the state's action is not complete until and unless it provides or refuses to provide a suitable post[-]deprivation remedy."  *Acevedo*, 2014 WL 5015470, at *13 (quoting *Hudson*, 468 U.S. at 533).  In applying this doctrine, "the Second Circuit has determined that 'New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action.'"  *Id*. (italics omitted) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)); *see also Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317, at *11 (S.D.N.Y. Aug. 15, 2012) ("New York provides such an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, and conversion." (collecting cases)), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012).  "District courts thus routinely dismiss claims by inmates who assert that they were deprived of property by corrections officers in New York."  *Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *7 (S.D.N.Y. Sept. 25, 2020) (quotation marks omitted); *see also Davis v. Collado*, No. 16-CV-7139, 2018 WL 4757966, at *16 (S.D.N.Y. Sept. 30, 2018) (collecting cases); *JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *32 (S.D.N.Y. Apr. 24, 2014) (dismissing an inmate's deprivation of property claim because "the existence of an adequate post-deprivation state remedy precludes a due process claim

under § 1983" (citations omitted)), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Green v. Niles*, No. 11-CV-1349, 2012 WL 987473, at *6 (S.D.N.Y. Mar. 23, 2012) (dismissing an inmate's claim because "a prison's loss of an inmate['s] property . . . will not support a due process claim redressable under § 1983 if adequate state post-deprivation remedies are available" (citation and quotation marks omitted)).

Here, the Amended Complaint includes the allegation that Defendant "confiscated, damaged, and destroyed" Plaintiff's property.  (Am. Compl. ¶ 6.)  Plaintiff cannot sustain a § 1983 claim based on the deprivation of his personal property alone.  *See Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir. 1988) (noting that the "mere deprivation of personal property would not rise to the level of a constitutional injury") (citation omitted).  This claim is therefore dismissed.

## 2.  Denial of Access to Law Library and the Courts

It is axiomatic that prisoners "have a constitutional right of access to the courts," *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quotation marks omitted), and that pro se inmates have a right to assistance in the form of "adequate law libraries or adequate assistance from persons trained in the law," *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  However, impairment of an inmate's "litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Pollack v. Holanchock,* No. 10-CV-2402, 2012 WL 1646893, at *2 (S.D.N.Y. May 10, 2012) (quotation marks omitted); *see also Razzoli v. Exec. Office of U.S. Marshals*, No. 10-CV-4269, 2010 WL 5051083, at *3 (E.D.N.Y. Dec. 2, 2010) (noting that "the Constitution does not require unlimited and unsupervised access to a law library at the demand of a prisoner," and that "[p]rison officials may impose reasonable restrictions on the use of a prison law library") (collecting cases); *Jermosen v. Coughlin*, No. 89-CV-1866, 1995 WL 144155, at *5 (S.D.N.Y. Mar.30, 1995)

10

("[I]nterferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right.").

"To establish a constitutional violation based on denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (quotation marks omitted); *see also Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) ("In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, i.e., took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." (alterations, italics, citations, and quotation marks omitted)).  For example, a plaintiff could show that he "has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality" as a result of the actions of the defendant. *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001); *see also Little v. Mun. Corp., City of New York*, No. 12-CV-5851, 2017 WL 1184326, at *9 (S.D.N.Y. Mar. 29, 2017).

Here, Plaintiff alleges that Defendant caused him to miss a scheduled library callout and be taken off the law library rotation, which resulted in Plaintiff missing two court deadlines. (Am. Compl. ¶¶ 13–16.)  Specifically, Plaintiff claims that he "missed [a] . . . deadline for . . . *Gunn v. Annuci, et al.*[,] No. 19-CV-10039."  (*Id.* ¶ 30 (italics added).)  Plaintiff also states that he "missed [a] 90[-]day New York State Court of Claim deadline to file [a] notice of intention in *Darrell Gunn v. State of New York*, Motion Number M-95057."  (*Id.* ¶ 29 (italics added).)

As to the federal case, the Court takes judicial notice of the fact that the first two digits of a federal case index number represent the year of filing, so the case Plaintiff references, index number "19-CV-10039," was not filed until 2019, at least 18 months *after* the events that give

rise to Plaintiff's claims.  (*Id.* at ¶ 30.)  *See Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-7235, 2021 WL 84232, at *1 (E.D.N.Y. Jan. 11, 2021) (taking judicial notice of information related to an index number).  Plaintiff alleges that his federal case was "ultimately dismissed as untimely," but it is unclear if the dismissal was related to the deadline that Plaintiff claims to have missed.  (Compl. ¶ 30.)  The Court finds that it is implausible that either the missed deadline or dismissal were in any way related to Defendant's alleged conduct, which occurred at least a year and a half before Plaintiff's federal case was even filed.  Thus, Plaintiff has failed to allege actual injury in prosecuting the federal case, and he lacks standing to assert a denial of access claim.  *See Lewis v. Westchester Cty.*, No. 18-CV-04086, 2020 WL 5535374, at *7 (S.D.N.Y. Sept. 14, 2020) (dismissing denial of access to the courts claim where plaintiff's allegations were "sparse, conclusory and fail[ed] to allege any injury"); *Odom v. Poirier*, No. 99-CV-4933, 2004 WL 2884409, at *9 (S.D.N.Y. Dec. 10, 2004) (dismissing denial of access claim where the plaintiff failed to "sufficiently allege how [the defendants'] conduct materially prejudiced any existing legal action."); *Gill v. Pact Org.*, No. 95-CV-4510, 1997 WL 539948, at *5 (S.D.N.Y. Aug. 28, 1997) (dismissing denial of access claim where the plaintiff "[did] not show[] that he sustained a dismissal of, or suffered any prejudice to, a lawsuit").

As to the Court of Claims case, Plaintiff alleges missing the 90-day deadline resulted in the "NYS Court of Claims refus[ing] to allow [P]laintiff to late file a claim."  (Am. Compl. ¶ 16.)  Drawing all inferences in his favor, Plaintiff has sufficiently alleged that he suffered an injury as a result of Defendant's actions as he was "unable to file a [claim]" as a result of his missing the deadline to file his notice of intention.  *Benjamin*, 264 F.3d at 184.  However, Plaintiff's claim fails because he has not plausibly alleged that Defendant's actions were "deliberate and malicious."  *Bellezza*, 730 F. Supp. 2d at 314.  Plaintiff alleges that Defendant

took his property and placed him in keep lock for writing grievances, not for initiating or

pursuing his claims in court.  (Am. Compl. ¶¶ 4–5.)  Even drawing all inferences in his favor,

Plaintiff's allegations do not suggest that Defendant was aware of Plaintiff's Court of Claims

case or placed him in keep lock in order to prevent him from meeting a filing deadline that may

have been months in the future.  Thus, Plaintiff has not sufficiently alleged that Defendant's

actions were deliberate and malicious, and his claim is dismissed.  *See Amaker v. Lee*, No. 13-

CV-5292, 2019 WL 1978612, at *13 (S.D.N.Y. May 3, 2019) (dismissing access to courts claim

in part because plaintiff failed "to identify deliberate and malicious conduct" by defendants);

*Richardson v. Dep't of Corr. of N.Y.S.*, No. 10-CV-6137, 2011 WL 4091491, at *6 (S.D.N.Y.

Sept. 13, 2011) (dismissing access to courts claim where plaintiff "failed to sufficiently plead

that there was any malice" in defendants' actions).

### 3.  Retaliation

"Prisoners have a constitutional right to petition the government, and it is a violation of

§ 1983 for prison officials to retaliate against prisoners for the exercise of that right."  *Perkins v.

Perez*, No. 17-CV-1341, 2019 WL 1244495, at *13 (S.D.N.Y. Mar. 18, 2019) (citation omitted).

To state a First Amendment claim of retaliation, an inmate must allege "(1) that the speech or

conduct at issue was protected, (2) that the defendant took adverse action against the [inmate],

and (3) that there was a causal connection between the protected conduct and the adverse

action."  *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation, alteration, and quotation

marks omitted).

[T]he filing of prison grievances is . . . constitutionally protected."  *Davis v Goord*, 320

F.3d 346, 352 (2d Cir. 2003); *see also Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996);

*Franco*, 854 F.2d at 590.  Indeed, "[i]t is well-established that inmates' filing of grievances is a

constitutionally protected exercise of their right under the First Amendment to petition the government for the redress of grievances." *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *10 (S.D.N.Y. Sept. 28, 2018) (quotation marks and citation omitted); *see also Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *4 (S.D.N.Y. July 16, 2013) (same); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 367 & n.21 (S.D.N.Y. 2011) (same; collecting cases).

Here, Plaintiff claims that Defendant lost and damaged Plaintiff's property and placed him on keep lock—thereby causing him to miss his scheduled evening library callout, which in turn caused him to miss a court deadline—in retaliation for filing grievances.  (*See* Am. Compl. ¶¶ 13–17.)  Plaintiff therefore meets the first prong of the test.

An adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Davis*, 320 F.3d at 353 (citation omitted).  In determining whether a prison official's conduct constitutes adverse action, "the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens."  *Id*. (citation, alterations, and quotation marks omitted omitted).  "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed that district courts must "approach prisoner retaliation claims with skepticism and particular care."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation and quotation marks omitted); *see also Graham*, 89 F.3d at 79 ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike.") (citation and quotation marks omitted)).  Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations"

14

and not stated in "wholly conclusory terms." *Dolan*, 794 F.3d at 295 (citation and quotation marks omitted); *Tutora v. Gessner*, No. 17-CV-9517, 2019 WL 1382812, at *6 (S.D.N.Y. Mar. 27, 2019) (same).

At this stage, Plaintiff's claims are sufficiently detailed to find he was the subject of adverse action. Plaintiff has alleged that prior to the incident he had filed grievances, going back as far as 2014 (Am. Compl ¶¶ 7, 8, 28), but states that Defendant was not implicated in any of them, (*id.* ¶ 18). Plaintiff has also alleged that while he "was transferring his property from one cell to another during [a] cell move," (*id.* ¶ 1), Defendant "los[t]" and "damage[ed]" Plaintiff's property, (*id.* ¶ 3). The Amended Complaint also alleges that Defendant stated, "[Y]ou write grievances! I'm going to take your property!", (*id.* ¶ 4), and "[Y]ou write grievances. You are keep locked!", (*id.* ¶ 5). Confining a prisoner to keeplock is sufficient to establish an adverse action. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (finding "sentence of three weeks in keeplock" constituted adverse action); *Mack v. Hall*, No. 18-CV-875, 2020 WL 5793438, at *8 (N.D.N.Y. July 27, 2020), *report and recommendation adopted*, No. 18-CV-875, 2020 WL 5775205 (N.D.N.Y. Sept. 28, 2020) ("The Second Circuit has held that being placed in keeplock or otherwise confined is an adverse action.") (citing *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)); *Marshall v. Griffin*, No. 18-CV-6673, 2020 WL 1244367, at *6 (S.D.N.Y. Mar. 16, 2020) (same).

Drawing all inferences in Plaintiff's favor, he has also satisfied the causation prong. In order to show causation, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2000) (omitting internal quotation). Factors considered in evaluating whether causation existed include: "(1) the temporal proximity of the filing to the grievance and the

disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Thomas v. DeCastro*, No. 14-CV-6409, 2019 WL 1428365, at *9 (S.D.N.Y. Mar. 29, 2019) (citation omitted).

Here, the Court finds that Plaintiff's allegations, liberally construed, provide the specificity necessary to satisfy the causation factors as articulated in *Thomas*. Plaintiff has alleged that he filed a grievance related to a package withheld by other corrections officers on May 25, 2017, a week before his interaction with Defendant. (Am. Compl ¶ 8.) Plaintiff also claims that, prior to the incident, he had a "good . . . disciplinary record." (*Id.* ¶ 20.) Plaintiff has alleged that during the incident Defendant stated, "[Y]ou write grievances. I'm going to take your property!", (*id.* ¶ 4), and "[Y]ou write grievances. You are keep locked!", (*id.* ¶ 5). Defendant's statements that Plaintiff's grievances were the reason for his disciplinary actions, along with Plaintiff's allegation that he had recently filed a grievance against other officers, are sufficient to support an inference of causation. *See Burgess v. Banasike*, No. 19-CV-6617, 2022 WL 13740744, at *5 (W.D.N.Y. Oct. 24, 2022) (explaining that "[w]hile as a general matter, it is difficult to establish one defendant's retaliation for complaints against other correctional officers, this general rule may not apply where there are indications of a retaliatory purpose—i.e., that the officer's conduct was meant to penalize the plaintiff for bringing past grievances, and to dissuade future grievances") (alterations and internal quotation marks omitted); *Moreau v. Ellsworth*, No. 20-CV-124, 2021 WL 3813172, at *11 (N.D.N.Y. July 15, 2021) (holding that "while a plaintiff who 'alleges retaliatory adverse action by one officer for a grievance filed against another officer . . . faces a heightened burden of establishing a causal connection,' this does not necessarily bar a retaliation claim where there are indications of 'a retaliatory purpose'") (quoting *Vincent v.*

*Sitnewski*, 117 F. Supp. 3d 329, 338-39 (S.D.N.Y. 2015)), *adopted*, No. 20-CV-124, 2021 WL 3793772 (N.D.N.Y. Aug. 26, 2021); *Kotler v. Boley*, No. 21-1630, 2022 WL 4589678, at *2 (2d Cir. Sept. 30, 2022) (summary order) (noting that "causation may be established even if a prisoner's protected conduct was not directed at the defendant").[4]  Courts in this District have held that a delay of a week between the protected activity and that occurrence of an adverse action is insufficient to undermine an inference of causation.  *See, e.g., Arriaga v. Gage*, No. 16-CV-1628, 2018 WL 1750320, at *10 (S.D.N.Y. Apr. 6, 2018) (finding plaintiff adequately pled causation when six days elapsed between the protected activity and defendant's adverse action).

The Court notes that this is an especially close case because several of Plaintiff's allegations cut against finding that Plaintiff has adequately pled causation.  Plaintiff has failed to allege that he and Defendant had a pre-existing relationship. (*See generally* Am. Compl.) Plaintiff had also never filed a grievance against Defendant before the incident, (*id.* ¶ 18.), and there is no reason to believe that Defendant was personally aware of the May 25th grievance that Plaintiff references, as Defendant was not implicated in that grievance, (*id.* ¶ 8).  Additionally, although it is unclear from his allegations whether a hearing was held, Plaintiff does not appear to have been vindicated on his claims, as the two grievances he filed related to this incident were denied.  (*Id.* ¶¶ 23–24.)  However, because the Court must view the facts in the light most favorable to Plaintiff, the Court finds that his allegations are sufficient to raise an inference that Defendant acted in retaliation for Plaintiff's filing of a grievance the week before the incident

---

[4] Plaintiff also claims that the grievance review process is "rigged" because Plaintiff was not allowed to call a witness he wanted to testify on his behalf.  (Am. Compl. ¶¶ 10–12.) However, violations of prison grievance procedures do not give rise a cognizable § 1983 claim because inmate grievance procedures are not required by the Constitution.  *See Richard v. Fischer*, 38 F.3d 340, 361 (W.D.N.Y. 2014) (noting that incarcerated persons do not have a constitutional right of access to prison grievance processes); *see also Cancel v. Goord*, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (same).

against other officers.  *See, e.g., Davis*, 320 F.3d at 354 (holding that plaintiff stated a retaliation

claim against prison officials who allegedly took adverse action against him, even though his

protected conduct was a lawsuit against officials at a different prison filed a short time earlier).

### 4.  Official Capacity

Defendant argues that "[t]o the extent that Plaintiff . . . bring[s] claims against Defendant

in his official capacity, those claims should . . . be dismissed on Eleventh Amendment grounds."

(Def.'s Mem. 16.)  The Court agrees.

"[A]s a general rule, state governments may not be sued in federal court unless they have

waived their Eleventh Amendment immunity, or unless Congress has abrogated the states'

Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009).

New York has not waived its Eleventh Amendment immunity to suit in federal court, and

Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983.  *See Trotman v.*

*Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977); *Dubarry v. Capra*, No. 21-

CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021).  "The immunity recognized by

the Eleventh Amendment extends beyond the states themselves to state agents and state

instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F. 3d at 366.  The Eleventh

Amendment therefore also bars the claims for damages against the individual Defendant in his

official capacity.  *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir.1993) ("To the

extent that a state official is sued for damages in his official capacity, such a suit is deemed to be

a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity

belonging to the state.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985), *aff'd*, 589 F.

App'x 28 (2d Cir. 2015)); *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 436

(S.D.N.Y. 2017); *Perciballi v. New York*, No. 09-CV-6933, 2010 WL 3958731, at *4 (S.D.N.Y.

Sept. 28, 2010).  Thus, all claims filed against Defendant in his official capacity are dismissed.

       5.  Qualified Immunity

      Defendant also argues that he "is entitled to qualified immunity."  (Def.'s Mem. 16.)

"The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223,

231 (2009) (quotation marks omitted).  Qualified immunity shields a defendant from standing

trial or facing other burdens of litigation "if either (a) the defendant's action did not violate

clearly established law, or (b) it was objectively reasonable for the defendant to believe that his

action did not violate such law."  *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250

(2d Cir. 2001) (quotation marks omitted).

      The Supreme Court has held that when evaluating an asserted qualified immunity

defense, a court may begin by examining whether a reasonable officer in Defendant's position

would have believed his or her conduct would violate the asserted constitutional right.  *See*

*Pearson*, 555 U.S. at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), and explaining that

judges are no longer required to begin by deciding whether a constitutional right was violated but

are instead "permitted to exercise their sound discretion in deciding which of the two prongs of

the qualified immunity analysis should be addressed first").  The Supreme Court has further

instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable

official would [have understood] that what he is doing violates that right.  In other words,

existing precedent must have placed the statutory or constitutional question beyond debate."

*Reichle v. Howards*, 566 U.S. 658, 664 (2012) (second alteration in original) (citations and

quotation marks omitted).  Furthermore, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official."  *Id*. at 665 (citations and quotation marks omitted).  Otherwise stated, to determine whether a right is clearly established, courts must determine "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful."  *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'"  *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson*, 555 U.S. at 231–32).  "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion," but "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if "the facts supporting the defense appear on the face of the complaint."  *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)).  As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."  *Id.* at 436 (quotation marks omitted).

Here, Defendant argues that he is entitled to qualified immunity because "Plaintiff has not alleged facts sufficient to show that Defendant violated Plaintiff's constitutional rights and, by definition, has not alleged the violation of a right that was clearly established at the time of the alleged incident."  (Def.'s Mem. 17.)  However, because the Court has found that Plaintiff has stated a retaliation claim, Defendant is not entitled to qualified immunity.  Courts have long

recognized, well before the time of Plaintiff's allegations, that inmates have a constitutional right to seek redress of grievances without suffering retaliation. *See Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (holding that plaintiff stated a retaliation claim where plaintiff alleged prison officials intentionally filed false disciplinary charges against him in retaliation for participating in state investigation into inmate abuse); *Baskerville v. Blott*, 224 F. Supp. 2d 723, 737–38 (S.D.N.Y. 2002) (finding no qualified immunity for retaliation claim because right to file grievances without retaliation is well-established); *Wells v. Wade*, 36 F. Supp. 2d 154, 160 (S.D.N.Y. 1999) (same). Defendant has offered no argument that his conduct was objectively reasonable. Accordingly, Defendant is not entitled to qualified immunity on Plaintiff's retaliation claim at this early stage in the litigation.

### 6. Physical Injury Bar

Defendant next argues that § 1997e(e) of the Prison Litigation Reform Act ("PLRA") bars Plaintiff's claims because he "alleges no physical injuries. . ., only various mental or emotional injuries." (Def.'s Mem. 18.) Section 1997e(e) of the PLRA states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although "[b]y its terms, [§ 1997e(e)] does not limit the prisoner's right to request injunctive or declaratory relief," *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002), the Second Circuit has held that "[§] 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." *Id.* at 417. *See also Clay v. Lee*, No. 13-CV-7662, 2017 WL 436041, at *8 (S.D.N.Y. Jan. 30, 2017) (same); *Dillon v. City of New York*, No. 12-CV-7113, 2013 WL 6978959, at *2

21

(S.D.N.Y. Nov. 18, 2013) (same).  Indeed, "[c]ourts have consistently held that [§] 1997e(e) bars

prisoner civil rights suits seeking damages for constitutional violations where the inmate-plaintiff

suffers only emotional and mental injury." *Cox v. Malone*, 199 F. Supp. 2d 135, 139 (S.D.N.Y.

2002), *aff'd*, 56 F. App'x 43 (2d Cir. 2003); *accord Greene v. Dep't of Corr.*, No. 10-CV-5344,

2012 WL 694031, at *3 (S.D.N.Y. Mar. 5, 2012) ("Cases asserting emotional harm,

unaccompanied by a claim of physical harm, are routinely dismissed [under § 1997(e)].").

"Additionally, while 'physical injury' is not statutorily defined, the injury an inmate alleges must

be more than de minimis to meet the requirements of the PLRA." *Dillon*, 2013 WL 6978959, at

*2 (citing *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999)).  "To recover punitive or nominal

damages, however, a prisoner need not allege that he has sustained a physical injury." *Edwards

v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *22 (S.D.N.Y. Mar. 8, 2012) (citing *Thompson

v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002)).

Here, Plaintiff alleges various emotional and mental injuries.  Specifically, Plaintiff

alleges that he suffered "undue incredible hardships," including "worrying, loss of appetite, [a]

high level of stress, agony, anxiety, anger, degradation, depression, dehumanization, paranoia,

injustice, hopelessness [sic], [and] despair."  (Am. Compl. ¶ 32.)  Plaintiff has made no mention

of any physical injury related to Defendant's actions.[5]  While this failure to allege physical injury

would ordinarily bar Plaintiff's request for damages, Plaintiff's sole surviving claim is that

Defendant violated his First Amendment rights by retaliating against him for filing grievances.

Courts in this District have held that "a First Amendment deprivation presents a cognizable

---

[5] Plaintiff alleges he suffered physical injury "from prison guards['] assault on [him] as a
mental health prisoner on June 5, 2017 at Down State [C]orrectional [F]acility."  (Am. Compl. ¶
22.)  However, Plaintiff does not allege that Defendant played any part in causing the injuries,
and it is implausible that Defendant would have been involved, as he was employed at Green
Haven, not Downstate, Correctional Facility.

injury standing alone and the PLRA 'does not bar a separate award of damages to compensate the plaintiff for the First Amendment violation in and of itself.'"  *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004) (quoting *Ford v. McGinnis*, 198 F. Supp. 2d 363, 366 (S.D.N.Y. 2001)); *Rosado v. Herard*, No. 12-CV-8943, 2013 WL 6170631, at *10 (S.D.N.Y. Nov. 25, 2013), *report and recommendation adopted as modified*, No. 12-CV-8943, 2014 WL 1303513 (S.D.N.Y. Mar. 25, 2014) ("[T]he PLRA's physical injury requirement does not bar an award of compensatory damages for First Amendment violations.") (citation omitted); *Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317, at *17 (S.D.N.Y. Aug. 15, 2012), *report and recommendation adopted*, No. 11-CV-6062, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012) (holding that plaintiff's "retaliation claims allege deprivations of personal rights under the First Amendment which do not fall under the PLRA's physical injury requirement for compensatory damages."); *cf. Kerman v. City of N.Y.*, 374 F.3d 93, 125 (2d Cir. 2004) ("The damages recoverable for [plaintiff's Fourth Amendment claims] are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering.").  Additionally, the PLRA's physical injury bar does not apply to Plaintiff's claim for punitive damages.  *See Edwards*, 2012 WL 760172, at *22 (explaining that "[t]o recover punitive . . . damages, . . . a prisoner need not allege that he has sustained a physical injury") (citations omitted).

Thus, Plaintiff's claims for compensatory and punitive damages are not barred under the PLRA.

### 7.  Injunctive Relief

Plaintiff has requested that the Court "permanently enjoin defendants [sic][,] their assistants[,] successors[,] and persons acting in concert [or] cooperation with them from further violating" his "rights [and] privileges and the Constitution of the United States."  (Am. Compl. at

17.)  Because the issue of standing goes to this Court's jurisdiction, the Court *sua sponte* raises

the issue of whether Defendant has standing to request the injunctive relief he seeks.  *See Cent.

States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433

F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter

jurisdiction, it can be raised *sua sponte*.").

      "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a

'real or immediate threat' of injury."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir.

2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  "Although past

injuries may provide a basis for standing to seek money damages, they do not confer standing to

seek injunctive relief unless the plaintiff can demonstrate that [he] is likely to be harmed again in

the future in a similar way."  *Id*.; *see also Johnson v. Padin*, No. 20-CV-637, 2020 WL 4818363,

at *6 (D. Conn. Aug. 16, 2020) ("To obtain prospective injunctive relief, whether preliminary or

permanent, a plaintiff 'cannot rely on past injury[,] but must show a likelihood that she will be

injured in the future.") (ellipses omitted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d

340, 344 (2d Cir. 1998)); *Kelly v. N.Y. State Civ. Serv. Comm'n*, No. 14-CV-716, 2015 WL

861744, at *4 n.4 (S.D.N.Y. Jan. 26, 2015) (same); *see also Pungitore v. Barbera*, 506 F. App'x

40, 41 (2d Cir. 2012) (summary order) ("[W]hen seeking prospective injunctive relief, the

plaintiff must prove the likelihood of *future* or *continuing* harm."); *Krull v. Oey*, No. 19-CV-142,

2019 WL 1207963, at *10 (N.D.N.Y. Mar. 14, 2019) (same).

      Here, Plaintiff seeks an injunction against Defendant "from further violating" his "rights

[and] privileges" under the U.S. Constitution (Am. Compl. at 17), but he fails to allege in his

Amended Complaint "a likelihood of either future harm or continuing harm," *Krull*, 2019 WL

1207963, at *10.  All of Plaintiff's allegations relate to the single incident of retaliation he

allegedly experienced in June 2017.  (*See* Am. Compl. at 2.)  He does not allege that he has

experienced any other acts of retaliation nor does he allege that he expects future acts of

retaliation to occur.  (*See generally id.*)  Because Plaintiff has solely "rel[ied] on past injury,"

without "show[ing] a likelihood that he . . . will be injured in the future," the Court may not grant

his claim for prospective injunctive relief.  *DeShawn*, 156 F.3d at 344; *see also Tobin v.*

*Touchette*, No. 19-CV-213, 2020 WL 6828013, at *4 (D. Vt. July 15, 2020), *report and*

*recommendation adopted sub nom. Tobin v. Baker*, No. 19-CV-213, 2020 WL 4932279 (D. Vt.

Aug. 21, 2020) (finding prisoner lacked standing to seek injunctive relief because he had failed

to allege that medication shortages had or would recur); *Patterson v. Patterson*, No. 16-CV-844,

2019 WL 1284346, at *6 (W.D.N.Y. Mar. 20, 2019) ("Plaintiff fails to allege an ongoing

violation or threat of future enforcement of federal law that would entitle him to injunctive

relief."); *Caruso v. Zugibe*, No. 14-CV-9185, 2015 WL 5459862, at *6 (S.D.N.Y. June 22, 2015)

(denying claim for prospective injunctive relief because, "even if [the] defendants [had] violated

[the] plaintiff's rights in the past as she allege[d]," the plaintiff "ha[d] not plausibly alleged a

sufficient likelihood that she [would] again be wronged in a similar way." (citation, quotation

marks, and brackets omitted)).

### 8.  Revocation of Plaintiff's *In Forma Pauperis* Status

The Court has granted Plaintiff *in forma pauperis* ("IFP") status.  (Dkt. No. 6.)

Defendant argues that Plaintiff's IFP status should be revoked because Plaintiff has amassed

"three strikes" and is thus barred from proceeding IFP by the PLRA.  (Def.'s Mem. 19–20.)

The IFP statute, 28 U.S.C. § 1915, was "designed to ensure that indigent litigants have

meaningful access to the federal courts" and accordingly, waives the pre-payment of filing fees

for qualifying prisoners of limited financial means.  *Neitzke v. Williams*, 490 U.S. 319, 324

(1989). "However, concerned by the resulting rise of an 'outsize share of [prisoner] filings' and a 'flood of non[-]meritorious claims,' Congress enacted the PLRA in 1996 in order to curb abuses of the IFP privilege and ensure 'fewer and better prisoner suits.'" *Jones v. Moorjani*, No. 13-CV-2247, 2013 WL 6569703, at *3 (S.D.N.Y. Dec. 13, 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 203 (2007)), *adopted by* 2014 WL 351628 (S.D.N.Y. Jan. 31, 2014); *see also Tafari v. Hues*, 473 F.3d 440, 443 (2d Cir. 2007) (explaining that the PLRA was "designed to stem the tide of egregiously meritless lawsuits"). Toward that end, the PLRA contains a "three strikes" provision which states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g); *see also Coleman v. Tollefson*, 135 S. Ct. 1759, 1762 (2015) ("Among [the] reforms [is] the three strikes rule. . . ." (internal quotation marks omitted)). The plain language of the statute requires the Court to examine the circumstances at the time an action is filed to determine whether the litigant is barred under the provision. Thus, an action that is dismissed after a plaintiff has filed a case does not count as a strike in the newly filed case. *See Dixon v. Fishkill Corr. Fac.*, No. 17-CV-1123, 2019 WL 2866489, at *7-8 (S.D.N.Y. July 2, 2019); *Justice v. Merchant*, No. 12-CV-5103, 2012 WL 6061000, at *1 (E.D.N.Y. Dec. 5, 2012).

There is an exception to the three strikes rule where a prisoner is "under imminent danger of serious physical injury," 28 U.S.C. § 1915(g), and such imminent danger "exist[ed] at the time the complaint [was] filed," *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002); *see also Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018) (same). Further, the Second Circuit has held that the complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts."

*Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009).  Thus, a court must "consider (1) whether the imminent danger of serious physical injury . . . allege[d] is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would redress that injury."  *Id.* at 298–99.

Defendant cites to three cases where Plaintiff's claims have been dismissed for failure to state a claim: (1) *Gunn v. Jane Doe*, No. 19-CV-10383, 2020 WL 353240 (S.D.N.Y. Jan. 17, 2020); (2) *Gunn v. McNeil*, et al., 19-CV-11821, 2020 WL 7647422 (S.D.N.Y. Dec. 23, 2020); (3) *Gunn v. Bentivegna*, 20-CV-2440, 2020 WL 2571015 (S.D.N.Y. May 19, 2020).  (Def.'s Mem. 20.)  *See* 28 U.S.C. § 1915(g) (listing dismissals for "fail[ure] to state a claim upon which relief may be granted" as qualifying strikes); *see also Welch v. Galie*, 207 F.3d 130, 132 (2d Cir. 2000) (per curiam) (same).

On review, the Court finds that Defendant's argument fails because the dismissals in *McNeil* and *Bentivegna* were issued only after Plaintiff filed this action on March 30, 2020.  (*See* Compl. (Dkt. No. 2).)  Thus, Defendant's request that Plaintiff's IFP status be revoked is denied.

## III. Conclusion

For the foregoing reasons, the Court denies Defendant's Motion To Dismiss with respect to the First Amendment retaliation claim.  The Court grants Defendant's Motion with respect to the lost property and access to courts claims.  As this is the Court's second adjudication of Plaintiff's claims on the merits, these claims are dismissed with prejudice.  *See Wheeler v. Slanovec*, No. 16-CV-9065, 2019 WL 2994193, at *8 (S.D.N.Y. July 9, 2019) (dismissing claims with prejudice after "the second adjudication . . . on the merits").  The Court also denies Plaintiff's request for injunctive relief and denies Defendant's requests to eliminate monetary

damages because Plaintiff has not alleged physical injury and to revoke Plaintiff's IFP status. The Court will hold a status conference in this matter on May 1, 2023 at 11:00 AM.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 34), and to mail a copy of this Opinion & Order to Plaintiff.


SO ORDERED.

DATED:      March 28, 2023
            White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE