UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRELL GUNN,

                              Plaintiff,

        v.

CORRECTION OFFICER THOMAS
MILANI,

                              Defendant.

No. 20-CV-2681 (KMK)

OPINION & ORDER

Appearances:

Darrell Gunn
Fallsburg, NY
*Pro Se Plaintiff*

Ian Ramage, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Darrell Gunn ("Plaintiff"), proceeding pro se, brought this Action pursuant to 42 U.S.C.

§ 1983 ("§ 1983"), against Correction Officer Thomas Milani ("Defendant"), alleging that

Defendant violated his rights under the First Amendment when Defendant subjected him to

punishment for filing grievances while he was incarcerated at Green Haven Correctional Facility

("Green Haven").  (*See generally* Am. Compl. (Dkt. No. 28).)[1]  Before the Court is Defendant's

Motion for Summary Judgment (the "Motion").  (*See* Not. of Mot. (Dkt. No. 55).)  For the

reasons explained below, Defendant's Motion is denied.

---

[1] Unless otherwise noted, the Court refers to the ECF-stamped page number in the upper righthand corner of each page cited herein.

## I. Background

### A. Factual Background

The following facts are taken from Defendant's statement pursuant to Local Civil Rule 56.1 and the admissible evidence submitted by Defendant.  (*See* Def's Rule 56.1 Statement ("Def's 56.1") (Dkt. No. 56).)[2]

---

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).  "A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted).

Here, Defendant filed and served his statement pursuant to Rule 56.1, (*see* Def's 56.1), and sent the required Local Rule 56.2 Notice to Plaintiff, (*see* Not. to Pro Se Litigant (Dkt. No. 57)).  However, Plaintiff failed to submit a response to Defendant's 56.1 Statement.  (*See generally* Dkt.)  Accordingly, the Court may conclude that the facts in Defendant's 56.1 Statement are uncontested.  *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).  Indeed, Defendant encourages the Court to come to that conclusion.  (*See* Reply Mem. of Law in Supp. of Mot. ("Def's Reply") 3 (Dkt. No. 61).)

However, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court has "in its discretion opt[ed] to conduct an assiduous review of the [entire] record" when deciding the instant Motion, *Smolen v. Brown*, No. 18-CV-7621, 2023 WL 6199094, at *1 n.1 (S.D.N.Y. Sept. 22, 2023) (citation omitted); *accord Bernel v. Korobkova*, No. 21-CV-5106, 2023 WL 6146600, at *1 n.2 (S.D.N.Y. Sept. 19, 2023); *Gunn v. Ayala*, No. 20-CV-840, 2023 WL 2664342, at *1 n.1 (S.D.N.Y. Mar. 28, 2023); *see also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund–Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se]

The facts are recounted "in the light most favorable to" Plaintiff, the non-moving Party. *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). The facts as described below are undisputed unless otherwise noted.

### 1. The June 1, 2017 Incident

Plaintiff was an incarcerated individual living on "E Block" at Green Haven at all times relevant to this Action. (Decl. of Ian Ramage, Esq. ("Ramage Decl.") Ex. A ("Pl's Dep. Tr.") at 38:8–19 (Dkt. No. 58-1).)[3] Defendant was a correction officer at Green Haven who, at least occasionally, worked on E Block. (*See id.* at 49:18–22, 50:24–51:7.)

On the morning of June 1, 2017, a non-party correction officer at Green Haven informed Plaintiff that he would be transferring to a new cell within E Block. (*See id.* at 41:16–42:6,

---

[p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) (italics omitted) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (quotation marks omitted)).

Separately, the Court notes that both Parties improperly cite to the Amended Complaint in their Motion papers. (*See* Def's 56.1 ¶¶ 2, 4–5, 7, 13; Pl's Opp'n to Mot. ("Pl.'s Opp'n") 1 (Dkt. No. 60).) "It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment." *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023); *see also Finnegan v. Berben*, No. 20-CV-10231, 2024 WL 1242996, at *1 n.2 (S.D.N.Y. Mar. 22, 2024) (same); *Bentivegna v. People's United Bank*, No. 14-CV-599, 2017 WL 3394601, at *13 (E.D.N.Y. Aug. 7, 2017) ("[A]n unverified complaint is not admissible evidence."); *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, No, 07-CV-3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. Jun. 4, 2009) (finding that on a motion for summary judgment "allegations in an unverified complaint cannot be considered as evidence." (citation omitted)). The Court is therefore free to disregard these unsupported assertions. *See Lax v. City Univ. of N.Y.*, No. 16-CV-799, 2020 WL 6161253, at *1 n.1 (E.D.N.Y. Oct. 21, 2020) (explaining that the defendants' reliance on allegations in the amended complaint in their Rule 56.1 statement amounted to "are an improper attempt to convert allegations from [the p]laintiff's unverified complaint into evidence"), *aff'd*, No. 20-CV-3906, 2022 WL 103315 (2d Cir. Jan. 11, 2022) (summary order).

---

[3] Citations to Plaintiff's deposition transcript cite the internal page and line numbers therein.

43:5–7.)  To facilitate this transfer, correction officers provided Plaintiff with five bags to hold his property.  (*See id.* at 44:9–19, 47:2–20.)  Plaintiff then proceeded to pack all of his belongings into those five bags.  (*See id.* at 47:14–23.)  After he packed up his belongings, Plaintiff took the bags and moved to his new cell.  (*See id.* at 47:24–48:19.)

Upon arriving at his new cell, Plaintiff began cleaning the floors and walls "[b]ecause the cell was filthy."  (*Id.* at 48:20–49:4.)  As Plaintiff was cleaning, he left the five bags containing his belongings in front of his cell.  (*Id.* at 49:8–11.)[4]  At some point thereafter, but before it was time for lunch, Defendant came by Plaintiff's new cell, noticed Plaintiff's belongings in the five bags outside of his cell, and told Plaintiff that the bags were creating a "fire hazard."  (*Id.* at 49:18–22.)  Plaintiff testified that Defendant specifically told him "if [he did not] give [Defendant] a reason why [he should not] move [his] property by the time [Defendant got] back [to his cell], it's a fire hazard."  (*Id.* at 53:2–5.)  Moreover, viewing the facts in the light most favorable to Plaintiff, Defendant also mentioned at that time that Plaintiff was known for writing grievances.  (*See id.* at 91:16–24.)[5]

---

[4] It is unclear from the record where, precisely, Plaintiff's five bags were in relation to his new cell.  However, Plaintiff consistently affirmed during his deposition that, while he was cleaning his new cell, the five bags were located outside of his cell.  (Pl's Dep. Tr. at 49:18–22, 52:13–15, 54:9–13, 55:22–25; *see also id.* at 56:16–20 (Plaintiff's testimony that he did not bring the five bags of his belongings back into his new cell immediately after he finished cleaning "[b]ecause the floor was wet").)

[5] Defendant asserts that he "instructed Plaintiff to move the five bags inside his cell because they were a fire hazard[,]" (Def's 56.1 ¶ 8 (citing Pl's Dep. Tr. at 49:15–21)), but the record is not entirely clear on that point.  During his deposition, Plaintiff denied that Defendant ever instructed him to put his belonging in his new cell.  (*See* Pl's Dep. Tr. at 53:12–20; *see also id.* at 54:19–22 ("Q. After he said [the bags were] a fire hazard, did [Defendant] tell you to do anything with your property? A. No.").)  However, he later affirmed that Defendant had told him to put his belongings in his cell.  (*See id.* at 91:16–24.)

4

During this interaction, Plaintiff asked Defendant for his name and, in response, Defendant pointed to his name tag. (*See id.* 51:19–52:5.) Notably, although he had seen Defendant before, Plaintiff testified that he did not know Defendants name—and could not recall whether he had ever interacted with Defendant—before June 1, 2017. (*Id.* at 49:25–50:9, 50:24–51:13.)[6]

After he pointed to his name tag in response to Plaintiff's question, Defendant left the area. (*See id.* at 55:12–18.) Despite Defendant's statements regarding the five bags outside of his cell, however, Plaintiff did not move his property into his cell. (*See id.* at 53:25–54:3.) Plaintiff testified that the correction officer who initially informed him that he was transferring to a new cell told him that he "could keep [his] property [outside of his] cell when [he] cleaned it and sanitized it." (*Id.* at 56:21–57:4.)

Approximately five minutes after he left, Defendant returned to Plaintiff's cell. (*See id.* at 56:2–7.) At that point, Defendant said to Plaintiff, in sum and substance, "you write grievances, you're keeplocked." (*Id.* at 58:21–59:3, 59:17–20; *see also id.* at 56:2–4.)[7] In

---

[6] Plaintiff also testified that he did not have any personal interaction with Defendant after June 1, 2017, such that their only interactions—to his recollection—occurred on the day in question. (*See* Pl's Dep. Tr. at 70:18–21.)

[7] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Jackson v. Moore*, No. 21-CV-1001, 2023 WL 4710869, at *5 (N.D.N.Y. Apr. 14, 2023) (quoting *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)), *report and recommendation adopted*, 2023 WL 4711091 (N.D.N.Y. July 24, 2023); *see also Cox v. Annucci*, No. 21-CV-1177, 2022 WL 3214772, at *1 n.6 (W.D.N.Y. Aug. 9, 2022) (noting that keeplock "is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." (quoting *Peralta v. Vasquez*, 467 F.3d 98, 103 n.6 (2d Cir. 2006))). (*See also* Pl's Dep. Tr. at 64:24–65:2 (Plaintiff's testimony that "[keeplock] means you cannot leave your cell").) Consistent with Plaintiff's testimony that "[t]here is no longer keeplock[,]" (Pl's Dep. Tr. at 65:20–66:4), it appears that the provision of New York's Administrative Code that permitted the use of the keeplock procedure has been repealed, *see* 7 N.Y.C.R.R. § 301.6.

addition, Defendant and another non-party correction officer confiscated the five bags containing Plaintiff's belongings. (*See id.* at 57:13–58:2.) Plaintiff testified that neither Defendant nor the other correction officer said anything about his belongings when they took the bags. (*See id.* at 59:4–13.) After his belongings were taken, Plaintiff was held in keeplock for approximately one day—from around lunchtime on June 1 until it was time for breakfast on June 2, 2017. (*Id.* at 66:8–67:7.)[8]

Also on June 2, 2017, Plaintiff was able to retrieve the five bags that Defendant and the other correction officer confiscated. (*See id.* at 63:18–64:10.) Plaintiff testified that the only items missing consisted of his "legal work." (*Id.* at 64:11–22.)

### 2. Plaintiff's Grievance History

On or around July 6, 2017, Plaintiff filed a grievance concerning the incident on June 1, 2017. (*See id.* at 71:6–10, 72:23–25.)[9] Plaintiff's grievance was denied, which decision he appealed. (*See id.* at 71:21–23, 72:2–11.) Specifically, Plaintiff appealed first to Green Haven's superintendent, but that appeal was denied on or around August 9, 2017. (*See id.* at 72:12–16, 73:2–5.) Thereafter, Plaintiff appealed to the Central Office Review Committee, but his appeal was denied. (*See id.* at 72:12–16, 73:6–11.)

---

[8] Plaintiff testified that inmates were not given documentation when they were keeplocked; instead, they were simply informed by corrections officers when they were keeplocked. (*See* Pl's Dep. Tr. at 67:21–68:6.)

Perhaps as a consequence of that policy, Plaintiff did not receive a misbehavior report for the incident on June 1, 2017, nor is he aware of whether any documentation exists relating to that incident. (*See id.* at 79:7–14.)

[9] The Court notes that Plaintiff also testified that he filed a second grievance in connection with the incident on June 1, 2017, which was ultimately consolidated with the first. (*See* Pl's Dep. Tr. at 73:15–74:22.)

In addition to the grievance stemming from the incident on June 1, 2017, Plaintiff had previously filed a "large" number of other grievances. (*See id.* at 76:17–77:4.) None of those grievances involved Defendant. (*See id.* at 77:5–11.) Plaintiff also testified that he had never spoken to Defendant about any of his prior grievances, and that he did not have "any personal knowledge that [Defendant] knew about any of [his] prior grievances." (*Id.* at 77:12–18.)

Finally, as relevant here, Plaintiff filed a grievance against Green Haven's "package room" on May 25, 2017—just one week before the June 1, 2017 incident. (*Id.* at 77:19–78:8, 78:15–17.) This grievance did not mention or implicate Defendant. (*See id.* at 78:9–14.) Plaintiff testified that he had "no personal knowledge [as to whether Defendant] knew of [the May 25, 2017 grievance.]" (*Id.* at 79:2–6.)

B.  Procedural History

The Court has summarized the procedural history of this Action in its two prior Opinions on Defendant's Motions To Dismiss. *See Gunn v. Malani* (*Gunn II*), No. 20-CV-2681, 2023 WL 2664805, at *2 (S.D.N.Y. Mar. 28, 2023); *Gunn v. Malani* (*Gunn I*), No. 20-CV-2681, 2021 WL 5507057, at *2 (S.D.N.Y. Nov. 23, 2021).[10] The Court therefore assumes familiarity with that history and reviews only subsequent proceedings herein.

On March 28, 2023, the Court granted in part and denied in part Defendant's Motion To Dismiss the Amended Complaint. *See Gunn II*, 2023 WL 2664805, at *12. Specifically, the Court denied the Motion To Dismiss with respect to Plaintiff's First Amendment retaliation claim. *See id.* Defendant filed an Answer to the Amended Complaint on April 11, 2023. (*See* Answer (Dkt. No. 40).)

---

[10] Because Plaintiff had brought suit against "T. Malani," the docket for this Action initially reflected that spelling of Defendant's name. *See Gunn II*, 2023 WL 2664805, at *1 n.1. The docket now reflects the proper spelling of Defendant's name. (*See generally* Dkt.)

Following discovery, Defendant filed a pre-motion letter seeking leave to file the instant Motion on September 12, 2023.  (*See* Letter from Ian Ramage, Esq. to Court (Sept. 12, 2023) (Dkt. No. 51).)  During a pre-motion conference on September 28, 2023, Plaintiff indicated that he had not received Defendant's letter, so the Court directed Defendant to mail the letter to him and to "work with the correctional facility where Plaintiff [was] located to ensure that he receive[d] the letter."  (Dkt. (minute entry for Sept. 28, 2023).)  The Court received Plaintiff's response to Defendant's pre-motion letter, which was dated October 2, 2023, on October 10, 2023.  (*See* Letter from Darrell Gunn to Court (Oct. 2, 2023) (Dkt. No. 52).)  On December 14, 2023, Defendant submitted a proposed briefing schedule, which the Court adopted that same day. (*See* Dkt. Nos. 53–54.)

Pursuant to that briefing schedule, Defendants filed their Motion and accompanying papers on December 15, 2023.  (*See* Not. of Mot.; Def's 56.1; Not. to Pro Se Litigant; Ramage Decl. (Dkt. No. 58); Def's Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 59).)  The Court received Plaintiff's Opposition, which was dated December 27, 2023, on January 2, 2024. (Pl's Opp'n.)  On January 29, 2024, Defendant filed his Reply papers.  (*See* Def's Reply; Reply Decl. of Ian Ramage, Esq. in Supp. of Mot. ("Ramage Reply Decl.") (Dkt. No. 62).)[11]

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[11] In his Reply, Defendant suggests that Plaintiff brought up—for the first time in opposition to the instant Motion—the existence of an eyewitness to the interaction between Plaintiff and Defendant on June 1, 2017.  (Def's Reply 6 n.1.)  In doing so, Defendant ignores the fact that Plaintiff referenced this witness during his deposition, (*see* Pl's Dep. Tr. at 79:23–82:16), and in the Amended Complaint, (*see* Am. Compl. ¶¶ 10–11).

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same); *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022) (same); *Cambridge Funding Source LLC v. Emco Oilfield Servs. LLC*, No. 22-CV-10741, 2023 WL 7405862, at *4 (S.D.N.Y. Nov. 9, 2023) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "The movant 'bears the initial burden of showing that there is no genuine dispute as to a material fact.'" *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018)); *see also LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23, 2023 WL 6610764, at *7 (S.D.N.Y. Oct. 10, 2023) (same); *Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (same). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward

with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023) (same), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566, 2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading." (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009))).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)). "At this stage, 'the role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept. 28, 2023) (alteration adopted) (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)). Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'" *Sullivan v. Nat'l Express LLC*, No. 21-CV-5789, 2023 WL 6279255, at *8 (S.D.N.Y. Sept. 26, 2023) (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp.*, 477 U.S. at 323–24)).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998)). "'[W]here a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (quoting *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P.56(c)(4))); *see also E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ." (internal citation omitted)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal citation omitted)).

"As a general rule, 'district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage.'" *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183 (S.D.N.Y. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on

summary judgment." (quotation marks omitted)).  Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage."  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court").  And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment."  *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he credibility of [the plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact").

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344; *Mercado v. Div. of N.Y. State Police,* No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  Nonetheless, "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment."  *Houston*, 27 F. Supp. 3d at 351 (italics and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

B.  Analysis

In light of the Court's decision on Defendant's Motion To Dismiss the Amended

Complaint, Plaintiff's allegations in this Action have been limited to a single claim for First

Amendment retaliation.  *Gunn II*, 2023 WL 2664805, at *12.  In particular, Plaintiff asserts that

Defendant violated his First Amendment rights when Defendant placed him on keeplock in

direct retaliation for filing grievances.  (*See* Am. Compl. 13–17.)  Defendant argues that

Plaintiff's First Amendment retaliation claim must fail because there is no triable issue of fact as

to whether there was a causal connection between Plaintiff's protected speech and Defendant's

alleged retaliatory conduct, and, independently, that Plaintiff would have been disciplined

regardless of any retaliatory motive on the part of Defendant.  (*See generally* Def's Mem.)  The

Court addresses each of these arguments in turn.

### 1.  Prima Facie Showing of First Amendment Retaliation

"Prisoners have a constitutional right to petition the government, and it is a violation of

§ 1983 for prison officials to retaliate against prisoners for the exercise of that right."  *Bonie v.*

*Annucci*, No. 20-CV-640, 2023 WL 2711349, at *12 (S.D.N.Y. Mar. 30, 2023) (quoting *Perkins*

*v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at *13 (S.D.N.Y. Mar. 18, 2019)).  "A plaintiff

asserting a First Amendment retaliation claim must establish that: (1) his speech or conduct was

protected by the First Amendment; (2) the defendant took an adverse action against him; and

(3) there was a causal connection between this adverse action and the protected speech."

*Galgano v. County of Putnam*, No. 16-CV-3572, 2024 WL 1623401, at *104 (S.D.N.Y. Apr. 15,

2024) (quotation marks omitted) (quoting *Matthews v. City of New York*, 779 F.3d 167, 172 (2d

Cir. 2015)); *accord Barkai v. Mendez*, No. 21-CV-4050, 2024 WL 811561, at *23 (S.D.N.Y.

Feb. 21, 2024); *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *10 (S.D.N.Y. Sept. 28,

2018). "An inmate bears the burden of showing that 'the protected conduct was a substantial or motivating factor' in the prison officials' disciplinary decision." *Holland v. Goord*, 758 F.3d 215, 225–26 (2d Cir. 2014) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). Additionally, "[t]he Second Circuit has made clear that courts are to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Terry*, 2018 WL 4682784, at *10 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)); *see also Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (same); *Gunn II*, 2023 WL 2664805, at *6 ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (citation omitted)).

As an initial matter, Defendant does not dispute that the first two elements of the First Amendment retaliation analysis have been met for purposes of this Motion.  (*See* Def's Mem. 11; Def's Reply 4.)  With regard to the first element—whether Plaintiff's speech or conduct was protected by the First Amendment—Plaintiff's undisputed testimony that he filed grievances clearly establishes that this element has been satisfied.  *See supra* Section I.A.2.  As the Court has previously explained, "the filing of prison grievances is constitutionally protected." *Gunn II*, 2023 WL 2664805, at *6 (collecting cases) (quoting *Davis*, 320 F.3d at 352); *see also Terry*, 2018 WL 4682784, at *10 ("It is well-established that inmates' filing of grievances is a constitutionally protected exercise of their right under the First Amendment to petition the government for the redress of grievances." (quoting *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *4 (S.D.N.Y. July 16, 2013)))).  And as to the second element—whether Defendant took an adverse action against Plaintiff—the focus of the inquiry is whether the

"retaliatory conduct [] would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353; *see also Marshall v. Griffin*, No. 18-CV-6673, 2020 WL 1244367, at *6 (S.D.N.Y. Mar. 16, 2020) (explaining that "the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens" (citation omitted)). Again, Defendant does not dispute this element, and the Court has already explained that "[c]onfining a prisoner to keeplock is sufficient to establish an adverse action." *Gunn II*, 2023 WL 2664805, at *7; *see also Mack v. Hall*, No. 18-CV-875, 2020 WL 5793438, at *8 (N.D.N.Y. July 27, 2020) (declining to grant summary judgment in favor of a defendant where the alleged adverse action involved the plaintiff's "two-day confinement in a medical cell"), *report and recommendation adopted*, 2020 WL 5775205 (N.D.N.Y. Sept. 28, 2020).[12]

Thus, the remainder of the Court's analysis focuses on the third element of a First Amendment retaliation claim—causation. When assessing whether "there was a causal connection between [] protected conduct and [alleged] adverse action," a court may consider: "(1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Gunn II*, 2023 WL 2664805, at *6–7; *accord Thomas v. DeCastro*, No. 14-CV-6409, 2021 WL 5746207, at *7 (S.D.N.Y. Dec. 1, 2021); *see also Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y.

---

[12] In his Motion papers, Defendant suggests that Plaintiff's placement on keeplock for around one day, beginning on June 1, 2017, does not constitute an adverse action because it was merely a de minimis punishment. (*See* Def's Mem. 11; Def's Reply 4.) However, in the absence of any meaningful briefing on the issue, the Court will not hold, as a matter of law, that one day on keeplock cannot constitute an adverse action for purposes of a First Amendment retaliation claim—i.e., that it would not "deter a similarly situated [incarcerated] individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353.

2012) (explaining that "[t]he customary indicators which could give rise to an inference of retaliation" include "temporal proximity between [the plaintiff's protected activity] and the allegedly-retaliatory actions" and "telling comments by the defendant[]").

Here, two of the causation factors counsel against concluding that there was any causal connection between Plaintiff's filing of a grievance and Defendant's alleged adverse action. First, evidence in the record suggests that Plaintiff has had a less-than-stellar disciplinary history during his current period of incarceration, as Plaintiff himself testified that he has been placed in keeplock "several" times before, (Pl's Dep. Tr. at 65:3–9), received approximately seven "misbehavior reports" since 2003, (*id.* at 34:9–15), and, as a result of at least some of those reports, been disciplined through placement in a Special Housing Unit, (*id.* at 35:6–13; *see also* Ramage Reply Decl. Ex. C at 2–4 (disciplinary report for Plaintiff that reflects thirteen incidents between November 2003 and June 2014, including allegations of "assault on staff," "assault on inmate," and "violent conduct") (Dkt. No. 62-1).)[13]  And second, it is undisputed that Plaintiff's grievance stemming from the incident on June 1, 2017 was denied, as were Plaintiff's corresponding appeals.  *See supra* Section I.A.2.

However, the Court's analysis does not end there.  To be sure, Plaintiff's disciplinary history and the fact that he was not vindicated through the grievance process following the incident on June 1, 2017 seriously undermine any potential inference of causation here.  *See*

---

[13] The Court recognizes Plaintiff's contention that he does, in fact, have a good disciplinary record and that the misbehavior reports he had received are "false."  (*See* Pl's Opp'n 2.)  However, he provides no details and points to no evidence in support of this contention.  (*See generally id.*)

Additionally, to the degree that Plaintiff maintains his assertion that the grievance process "does not work" and is "rigged," (*see id.* at 2), the Court reiterates that "violations of prison grievance procedures do not give rise a cognizable § 1983 claim because inmate grievance procedures are not required by the Constitution[,]" *Gunn II*, 2023 WL 2664805, at *7 n.4 (collecting cases).

*Thomas*, 2021 WL 5746207, at *8 (concluding that the plaintiff's "exceptionally poor disciplinary record . . . fatally undercut[] any suggestion that the misbehavior report [at issue] was aberrant and, therefore, retaliatory"); *Barclay v. New York*, 477 F. Supp. 2d 546, 559 (N.D.N.Y. 2007) (noting that the plaintiff's admission that he was guilty of certain misconduct charges "temper[ed] somewhat any inference of improper motive" on the part of the defendants); *cf. Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("[W]e have determined that evidence of prior good behavior . . . may be circumstantial evidence of retaliation."), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). Nevertheless, the remaining two causation factors persuasively auger in favor of concluding that Defendant's alleged adverse action was causally connected to Plaintiff's protected conduct—namely his filing of grievances.[14]

_____

[14] It bears noting that, in general, the cases Defendant relies upon in his discussion of the disciplinary-history and vindication causation factors do not involve evidence of *both* temporal proximity *and* statements by the defendant regarding his motive for disciplining the plaintiff—which, as discussed below, exists here—or otherwise compel a conclusion in his favor. *See Moore v. Peters*, 92 F. Supp. 3d 109, 121–22 (W.D.N.Y. 2015) (denying the defendants' motion for judgment on the pleadings as to the plaintiff's First Amendment retaliation claim where the plaintiff had plausibly alleged "temporal proximity between his protected activities and the alleged retaliatory conduct[,] as well as "that he ha[d] a good disciplinary record," even though defendants argued that the plaintiff "was not vindicated at a subsequent hearing" and that "there [were] statements by [the d]efendants regarding their non-retaliatory motive for taking the alleged adverse actions attached" to the complaint); *Webster v. Fischer*, 694 F. Supp. 2d 163, 170, 183–84 (N.D.N.Y. 2010) (adopting report and recommendation recommending that the court grant summary judgment on a First Amendment retaliation claim where, inter alia, it was "questionable whether the disciplinary action followed [the] plaintiff's complaints close enough in time to raise an inference of retaliation" and there was no other factor that supported a finding of causation); *Barclay*, 477 F. Supp. 2d at 558–59 (granting summary judgment on the plaintiff's First Amendment retaliation claim where, inter alia, there was no evidence of temporal proximity, the plaintiff did not have a good disciplinary record, and there were "no statements from the defendants as to their motives for making the disciplinary charges" at issue). (*See also* Def's Mem. 15–17; Def's Reply 5–6.)

The Court notes that, in *Jones v. Marshall*, the court granted summary judgment in the defendants' favor on a First Amendment retaliation claim where there was "close temporal proximity between [the p]laintiff's grievance and the misbehavior report [at issue,]" but the

a. Temporal Proximity

With respect to the temporal proximity between Plaintiff's protected conduct and Defendants alleged adverse action, *see Gunn II*, 2023 WL 2664805, at *7, the record evidence reflects that Plaintiff filed a grievance approximately one week before the June 1, 2017 incident, (*see* Pl's Dep. Tr. at 77:19–78:8, 78:15–17.) As Defendant rightly concedes, (*see* Def's Mem. 13), "[o]ne way a plaintiff can establish a causal connection [in this context] is by 'showing that protected activity was close in time to the adverse action[,]'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)); *see also Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002) (noting that "temporal proximity of an allegedly retaliatory misbehavior report to a grievance [could] serve as circumstantial evidence of retaliation" where the misbehavior report at issue was written six days after the plaintiff filed a grievance); *cf. Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020) (explaining that one month between a grievance and false misbehavior report constituted circumstantial evidence of retaliation).

In support of his Motion, Defendant argues that there was, in fact, no temporal proximity between Plaintiff's May 25, 2017 grievance and Defendant's alleged adverse action because

---

plaintiff had a poor disciplinary history, and the plaintiff was later found guilty of the violations in the underlying misbehavior report. No. 08-CV-562, 2010 WL 234990, at *5 (S.D.N.Y. Jan. 19, 2010). The plaintiff in *Jones* also asserted that an officer-defendant "threatened to fabricate a misbehavior report if he filed a grievance report[,]" but the court did not credit that assertion, noting—without citation to any legal authority—that the plaintiff did not cite "any additional facts on the record, such as the testimony of other inmates or officers on duty . . . to support his allegation." *Id.* Particularly in view of the "special solicitude" that ought to be afforded to pro se litigants, *Graham*, 848 F.2d at 344, this Court finds the reasoning in *Jones* to be unpersuasive. Indeed, the lack of corroborating evidence would simply seem to go to the weight of the plaintiff's testimony, but it is otherwise inappropriate for a court to "assess the credibility of witnesses at the summary judgment stage." *Parker*, 425 F. Supp. 3d at 183 (citation omitted); *see also Scott*, 344 F.3d at 290–91 (explaining that, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment").

Defendant was not involved in or implicated by that grievance and, more generally, Plaintiff and Defendant had not interacted before the June 1, 2017 incident.  (Def's Mem. 12–15.)[15]  Although those arguments weaken the causal inference to be drawn from the relatively brief passage of time between the May 25, 2017 grievance and the June 1, 2017 incident, courts have consistently concluded that a defendant's lack of involvement with a plaintiff's underlying protected speech or conduct is not necessarily dispositive of a retaliation claim against them.  *See Espinal*, 558 F.3d at 129–30 (reversing grant of summary judgment to the defendant-correction officer on a First Amendment retaliation claim, reasoning that a factfinder could infer that the officer was aware of the protected conduct—a lawsuit against *other* officers—and therefore retaliated against the plaintiff); *Moreau v. Ellsworth*, No. 20-CV-124, 2021 WL 3813172, at *11 (N.D.N.Y. July 15, 2021) (holding—at the summary judgment stage—that "while a plaintiff who 'alleges retaliatory adverse action by one officer for a grievance filed against another officer . . . faces a heightened burden of establishing a causal connection,' this does not necessarily bar a retaliation claim where there are indications of 'a retaliatory purpose'" (quoting *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 338–39 (S.D.N.Y. 2015))), *report and recommendation adopted*, 2021 WL 3793772 (N.D.N.Y. Aug. 26, 2021); *see also Davis*, 320 F.3d at 354 (explaining that the plaintiff stated a First Amendment retaliation claim against prison officials who allegedly

---

[15] Defendant also suggests that "[t]emporal proximity is more context dependent than time dependent[,]" and cites *Espinal*, 558 F.3d at 129 as authority for that proposition.  (Def's Mem. 13.)  *Espinal*, however, says no such thing.  Instead, the Second Circuit made the unremarkable observation that there is no bright-line rule setting an "outer limit[] beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action[,]" which affords courts the ability to "exercise [] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases."  *Espinal*, 558 F.3d at 129 (citation omitted).  If context truly mattered more than time with respect to this causation factor of the First Amendment retaliation analysis, one wonders why "*temporal* proximity" would be an independent factor at all.

took adverse action against him, even though his protected conduct was a lawsuit against officials at a different prison); *Burgess v. Banasike*, No. 19-CV-6617, 2022 WL 13740744, at *5 (W.D.N.Y. Oct. 24, 2022) (explaining that "[w]hile as a general matter, it is difficult to establish one defendant's retaliation for complaints against other correctional officers, this general rule may not apply where there are indications of a retaliatory purpose—i.e., that the officer's conduct was meant to penalize the plaintiff for bringing past grievances, and to dissuade future grievances" (alterations adopted) (quotation marks omitted)); *cf. Kotler v. Boley*, No. 21-1630, 2022 WL 4589678, at *2 (2d Cir. Sept. 30, 2022) (summary order) (noting that "causation may be established even if a prisoner's protected conduct was not directed at the defendant").[16]

Finally, the Court recognizes that to establish causation for purposes of a First Amendment retaliation claim, "temporal proximity alone is not enough . . . ." *Gunn v. Bentivegna*, No. 20-CV-2440, 2021 WL 4084575, at *5 (S.D.N.Y. Sept. 8, 2021) (citation omitted).  However, as discussed below, Plaintiff has adduced additional evidence from which a reasonable fact finder could conclude that there was a causal connection between his protected conduct and Defendant's adverse action.

### b.  Defendant's Statements

Turning to the final causation factor, there is evidence in the record of statements by Defendant regarding his motive for disciplining Plaintiff that supports Plaintiff's claim.  *See Gunn II*, 2023 WL 2664805, at *7.  In particular, Plaintiff testified that Defendant first

---

[16] Throughout his Motion papers, Defendant also makes the overstated assertion that *Defendant* was not, as a matter of law, aware of Plaintiff's prior grievances, based solely on *Plaintiff's* testimony that he did not know, one way or the other, the degree to which Defendant was aware of his grievance history.  (*See* Def's Reply 4–5; Def's 56.1 ¶¶ 24, 37 (citing Pl's Dep. Tr. 77:15–18, 79:2–6).)  Yet, the Court notes that the record notably lacks *any* direct testimony from Defendant on *any* topic, including his personal knowledge with regard to Plaintiff's grievances or, indeed, his perspective as to what happened on June 1, 2017.

mentioned that he was known for writing grievances when Defendant came up to his cell and told him that his belongings were creating a fire hazard.  (*See* Pl's Dep. Tr. at 91:16–24.)  More importantly, Plaintiff further testified that, upon returning to his cell, Defendant told him that he was going to be keeplocked *for* writing grievances.  (*Id.* at 56:2–4, 58:21–59:3, 59:17–20.)

The Court notes that, throughout his briefing, Defendant characterizes Plaintiff's testimony as either "self-serving," (*see* Def's Mem. 7, 18–19; Def's Reply 3, 6) or "conclusory," (*see* Def's Mem. 18; Def's Reply 3–4).  That rhetoric, however, is unpersuasive.  For starters, it should come as no surprise that Plaintiff's testimony is supportive of his claim in this case.  And, in addition, Defendant misapprehends the meaning of "conclusory," which is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based."  Conclusory, Black's Law Dictionary (11th ed. 2019).  Here, Plaintiff's testimony that Defendant told him he was going to be keeplocked because he wrote grievances is not stating a factual inference; if credited, it is *direct* evidence that Defendant placed Plaintiff on keeplock in retaliation for Plaintiff's filing of grievances.  (*See* Pl's Dep. Tr. at 56:2–4, 58:21–59:3, 59:17–20.)  *See Colon*, 58 F.3d at 873–74 (vacating the district court's grant of summary judgment in favor of certain defendants and explaining that the plaintiff's allegation that a defendant admitted to a retaliatory scheme constituted direct evidence of retaliation); *see also Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017) (summary order) (vacating the district court's grant of summary judgment in the defendants' favor on the plaintiff's First Amendment retaliation claim where the plaintiff had "demonstrated temporal proximity" between his filing of grievances and the defendants' alleged adverse actions, *and* where the plaintiff asserted "in his affidavit . . . that all four of the [defendants] directly confronted him about his practice of filing grievances against

prison officials before filing false misbehavior reports[,]" notwithstanding the fact that each of the defendants "denied threatening or retaliating against [him]").

Additionally, to the degree that Defendant relies upon *Lewis v. Hanson*, No. 18-CV-12, 2022 WL 991729 (N.D.N.Y. Mar. 31, 2022) for his argument that Plaintiff's testimony is "self-serving" and "conclusory," the Court finds that case to be readily distinguishable.  (*See* Def's Mem. 18; Def's Reply 6.)  In *Lewis*, the plaintiff's "main argument" for causation was that there was "ample evidence to conclude that [the defendants] knew other [relevant] officers," given that they would go to trainings together and would otherwise run into one another at the prison where they worked.  2022 WL 991729, at *22 (record citation omitted).  Here, by contrast, Plaintiff has testified that Defendant expressly told him—at least twice—that he was going to be placed on keeplock for writing grievances.  (*See* Pl's Dep. Tr. at 56:2–4, 58:21–59:3, 59:17–20, 91:16–24.)

*          *          *

In short, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, as the Court must, *see Torcivia*, 17 F.4th at 354, the Court concludes that a reasonable jury could find that Plaintiff's protected conduct caused Defendant to place him on keeplock, based upon (1) the close temporal proximity between his May 25, 2017 grievance and the June 1, 2017 incident, and (2) Defendant's statement that he was punishing Plaintiff for filing grievances.  To the extent that Defendant raises "a question of 'he said, []he said,' . . . the [C]ourt cannot . . . take a side at the summary judgment stage."  *Fincher*, 604 F.3d at 726; *see also Kassel*, 272 F. Supp. 3d at 535 ("[I]t is not the role of the Court at summary judgment to resolve [a] factual clash."); *Santiago v. City of Yonkers*, No. 13-CV-1077, 2015 WL 6914799, at *2 (S.D.N.Y. Oct. 30, 2015) ("Where each party tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations

22

and apportion liability, and not for the court.")  Accordingly, the Court denies Defendant's

Motion insofar as it is based upon Plaintiff's asserted failure to establish the requisite causal

connection between Plaintiff's protected speech and Defendant's alleged adverse action.

### 2.  Likelihood of Disciplinary Action Absent Retaliatory Motivation

Where an incarcerated plaintiff establishes the elements of his First Amendment

retaliation claim, "[t]he defendant official then bears the burden of establishing that the

disciplinary action would have occurred 'even absent the retaliatory motivation,' which he may

satisfy by showing that the inmate 'committed the prohibited conduct charged . . . .'"  *Holland*,

758 F.3d at 226 (alteration adopted) (quoting *Gayle*, 313 F.3d at 682); *see also Brandon*, 938

F.3d at 40 (explaining that a defendant may "avoid liability [on a First Amendment retaliation

claim] by showing that he or she would have taken the adverse action 'even in the absence of the

protected conduct'" (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003))).  In other

words, "[r]egardless of the presence of retaliatory motive, . . . a defendant may be entitled to

summary judgment if he can show dual motivation, i.e., that even without the improper

motivation the alleged retaliatory action would have occurred."  *Scott*, 344 F.3d at 287–88

(italics omitted).

Defendant asserts that the Court should grant summary judgment in his favor because he

would have placed Plaintiff on keeplock on June 1, 2017, regardless of any alleged retaliatory

motive.  (*See* Def's Mem. 19–20; Def's Reply 7.)  More specifically, Defendant argues that he

was entitled to place Plaintiff on keeplock because Plaintiff failed to move his bags after being

informed that they created a fire hazard.  (*See* Def's Mem. 20 (citing Def's 56.1 ¶¶ 8, 10).)

The Court concludes that Defendant's argument here is half-baked at best.  Rather than

point to any evidence regarding disciplinary policies or procedures at Green Haven, Defendant

cites to a single case from 2001 for the proposition that "prisoners must obey all orders of facility personnel promptly and without argument."  (Def's Reply 7 (quoting *Gayle v. Lucas*, 133 F. Supp. 2d 266, 271 (S.D.N.Y. 2001)).)  However, Defendant does not argue, much less proffer any evidence, that the "Inmate Rules" discussed in *Gayle* were still applicable approximately sixteen years later, when the events at issue in this case took place.  *See* 133 F. Supp. 2d at 271. Moreover, regardless of whether Defendant in fact told Plaintiff to move his belongings into his cell, *see supra* note 5, Defendant does not appear to consider the implications of Plaintiff's testimony that another correction officer had separately told him that he "could keep [his] property [outside of his] cell when [he] cleaned it and sanitized it." (Pl's Dep. Tr. at 56:21– 57:4.)  Simply put, drawing all reasonable inferences in Plaintiff's favor, there is a triable issue of fact as to whether Defendant would have placed him on keeplock even absent any retaliatory motivation.

Accordingly, bearing in mind the "special solicitude" to which pro se litigants are entitled, *see Graham*, 848 F.2d at 344, the Court declines to grant summary judgment on the ground that Defendant would have placed Plaintiff on keeplock regardless of any alleged retaliatory motivation.

*         *         *

In sum, the Court denies Defendant's Motion in its entirety.  Even if Plaintiff's evidence with respect to his First Amendment retaliation claim is "thin," "[t]he credibility of [Plaintiff's testimony] and the weight of [any] contradictory evidence may only be evaluated by a finder of fact." *Scott*, 344 F.3d at 290–91.

III.  Conclusion

For the reasons stated above, Defendant's Motion is denied.  The Court will hold a telephonic status conference on October 8, 2024, at 10:00 a.m.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 55), and mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket.

SO ORDERED.

Dated:    September 9, 2024
              White Plains, New York

_____
        KENNETH M. KARAS
    United States District Judge