UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRELL GUNN,

*Plaintiff*,

v.

CORRECTION OFFICER THOMAS MILANI,

*Defendant*.

Case No. 20-CV-2681 (KMK)

ORDER & OPINION

Appearances:

Amy Jane Agnew, Esq.
Law Office of Amy Jane Agnew, P.C.
New York, NY
*Counsel for Plaintiff*

David Ari Kerschner, Esq.
Ryan Thomas Fenn, Esq.
Sarah D. Thompson, Esq.
Zachary Sweebe, Esq.
Arnold & Porter, Kay, Scholer LLP
New York, NY

Courtney Neufeld, Esq.
Arnold & Porter, Kay, Scholer LLP
Seattle, WA
*Counsel for Plaintiff*

Owen Crowley, Esq.
Ian Ramage, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Darrell Gunn ("Plaintiff"), proceeding pro se, brought this Action pursuant to 42 U.S.C. § 1983 ("§ 1983"), against Correction Officer Thomas Milani ("Defendant"), alleging that Defendant violated his rights under the First Amendment when Defendant subjected him to

punishment for filing grievances while he was incarcerated at Green Haven Correctional Facility ("Green Haven"). (*See generally* Am. Compl. (Dkt. No. 28).) Before the Court is Plaintiff's Motion for a Protective Order (the "Motion"), seeking to preclude Defendant's use of certain documents related to Plaintiff's receipt of mental healthcare. (Mot. for Protective Order ("Mot.") (Dkt. No. 83).) For the reasons set forth below, the Motion for a Protective Order is denied.

## I. Background

### A. Factual Background

The facts underlying this Action are described at length in the Court's earlier decision on Defendant's Motion for Summary Judgment. *See Gunn v. Milani*, No. 20-CV-2681, 2024 WL 4124319, at *2–4 (S.D.N.Y. Sept. 9, 2024) ("*Gunn III*"). They are described herein only insofar as is necessary to contextualize the instant Motion.

Plaintiff, who was incarcerated at all times relevant to this Action, claims that on June 1, 2017, while he was held at Green Haven Correctional Facility, Defendant, a corrections officer, along with another non-party officer confiscated his belongings. *Id.* at *3. Defendant ordered Plaintiff be held in keeplock for approximately one day, purportedly in retaliation for his history of writing grievances, during which time his "legal work" was taken from him. *Id.* at *3–4. Plaintiff brought suit *pro se*, and, during the course of the litigation, his claims were narrowed to a single claim for First Amendment retaliation. *Id.* at *7.

While he was proceeding *pro se*, Plaintiff signed medical release forms authorizing the disclosure of his mental health records held by the New York State Office of Mental Health. (*See* Decl. of Owen M. Crowley, Esq. ("Crowley Decl."), Ex. A (Dkt. No. 89-1); Decl. of Ryan T. Fenn, Esq. ("Fenn Decl."), Ex. 3 ¶ 6 (Dkt. No. 85-3).) These forms were enclosed "for Plaintiff[']s review and signature" in response to a document request he submitted. (Fenn Decl.,

Ex. 2, at 6 (Dkt. No. 85-2).) As he was proceeding pro se, Plaintiff did not have the benefit of advice from counsel as to the legal consequences of waiving privilege over these records, and Government counsel did not so advise him, except insofar as the release form contained the generic guidance that the information disclosed "is confidential and cannot legally be disclosed without [the signer's] permission" and stated that the signatory "d[id] not have to sign this authorization." (Crowley Decl., Ex. A; *see also* Fenn Decl., Ex. 3 ¶ 6.)

B. Procedural Background

The Court has summarized the procedural history of this Action in its three prior Opinions—the Opinion addressing Defendant's Motion for Summary Judgment as well as the two Opinions addressing Defendant's Motions to Dismiss. Accordingly, the Court recounts the procedural history only as it has developed since the most recent Opinion recounting the Action's history. *See Gunn III*, 2024 WL 4124319, at *4–6.

On September 9, 2024, the Court denied Defendant's Motion for Summary Judgment. *Id.* at *13. Shortly thereafter, Plaintiff requested, and the Court granted, the appointment of pro bono counsel. *Gunn v. Milani*, No. 20-CV-2681, 2024 WL 5056490, at *1 (S.D.N.Y. Dec. 10, 2024) ("*Gunn IV*"). By July 16, 2025, pro bono counsel appeared. (*See* Not. of Appearance (Dkt. No. 70); Not of Appearance (Dkt. No. 71).)

As relevant here, on November 21, 2025, Plaintiff's counsel filed a letter requesting a pre-motion conference, in anticipation of a request for a protective order over his psychotherapy records maintained by the New York State Office of Mental Health, invoking the psychotherapist-patient privilege. (Letter from Ryan T. Fenn, Esq. to Court (Nov. 21, 2025) (Dkt. No. 77).) Essentially, Plaintiff requested an order that the records not be used in the

proceedings. (*Id.*) Defendant filed a letter in opposition. (Letter from Owen Crowley, Esq. to Court (Dec. 4, 2025) (Dkt. No. 79).)

On December 10, 2025, the Court held a telephonic status conference, at which the Court extended the discovery deadline and ordered briefing on Plaintiff's request for a protective order. (*See* Dkt. (minute entry for proceedings held on December 10, 2025); Dkt. No. 82 (scheduling order dated Dec. 11, 2025).) On January 12, 2026, Plaintiff filed the instant Motion, as well as his Memorandum of Law in support thereof. (*See* Mot.; Mem. of Law in Supp. of Mot. for Protective Order ("Pl.'s Mem.") (Dkt. No. 84).) On January 30, 2026, Defendant filed his Memorandum of Law in Opposition. (Mem. of Law in Opp'n ("Def.'s Opp'n") (Dkt. No. 88).)

## II. Discussion

### A. Standard of Review

In litigation that involves solely federal claims, or where the Court's subject matter jurisdiction is premised on a federal question, privilege questions are resolved pursuant to federal law. *See* Fed. R. Evid. 501; *Powers v. Colonial Toyota, Inc.*, No. 18-CV-1604, 2019 WL 13291994, at *5 (D. Conn. Dec. 10, 2019) ("In this case, in which subject matter jurisdiction is premised on a federal question . . . and the state law claims in issue are addressed under the Court's supplemental jurisdiction, the asserted privileges are governed by the principles of federal law." (quotation marks and citation omitted)); *Marsteller v. Butterfield 8 Stamford LLC*, No. 14-CV-1371, 2017 WL 5769903, at *2 (D. Conn. Nov. 27, 2017) (explaining that asserted privileges in federal question case would be governed by principles of federal law) (citing *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987)); *Hollis v. O'Driscoll*, No. 13-CV-1955, 2013 WL 2896860, at *1 (S.D.N.Y. June 11, 2013). "It is well settled that the burden of establishing the existence of [the psychotherapist-patient] privilege, in all of its

elements, rests with the party asserting it." *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000) (quotation marks and citation omitted); *see also Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ("As with all evidentiary privileges, the burden of proving that the [psychotherapist-patient] privilege applies rests not with the party contesting the privilege, but with the party asserting it."); *Tesser v. Bd. of Educ.*, 154 F. Supp. 2d 388, 391 (E.D.N.Y. 2001) ("As a general rule, the burden rests upon the party claiming a privilege."). "The party claiming privilege also carries the burden of showing that it has not been waived." *Hollis*, 2013 WL 2896860, at *1; *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 412 (S.D.N.Y. 2004) (same); *cf. In re Horowitz*, 482 F.2d 72, 81–82 (2d Cir. 1973) (explaining that the party asserting privilege has burden of showing "that the communications . . . were made in confidence and have been maintained in confidence").

B. Analysis

1. Waiver

In 1996, the Supreme Court confirmed the existence of a psychotherapist-patient privilege. *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996).[1] The Court explained that, "[l]ike the spousal and attorney-client privileges, the psychotherapist-patient privilege is rooted in the imperative need for confidence and trust" between a treating provider and a patient. *Id.* (quotation marks omitted). The practice of psychotherapy "depends upon an atmosphere of confidence and trust," often involves problems "of [a] sensitive nature" the disclosure of which

[1] It is undisputed that the federal law of the psychotherapist-patient privilege, rather than any state law establishing such a privilege, applies here. *See Marsteller v. Butterfield 8 Stamford LLC*, No. 14-CV-1371, 2017 WL 5769903, at *2 (D. Conn. Nov. 27, 2017) (explaining that asserted privileges in federal question case would be governed by principles of federal law) (citing *von Bulow*, 811 F.2d at 141).

"may cause embarrassment or disgrace," and its protection promotes the public good as "mental health . . . no less than . . . physical health[] is a public good of transcendent importance." *Id.* at 10–11. It is not evaluated pursuant to a balancing test, as "participants in the confidential conversation must be able to predict with some degree of certainty whether particular discussions will be protected," a level of protection that the Second Circuit has referred to as "strict." *In re Sims*, 534 F.3d 117, 131 (2d Cir. 2008) (quotation marks and citation omitted).

Even though the privilege is afforded "strict protection," the protection may nevertheless be waived. *In re Sims*, 534 F.3d at 131. Its "[w]aiver . . . may be either express or implied." *Id.*; *see also Gabriel v. Albany Coll. of Pharmacy & Health Scis. - Vermont Campus*, No. 12-CV-14, 2014 WL 3378629, at *2 (D. Vt. July 10, 2014) (same); *In re Jakubaitis*, 604 B.R. 562, 573 (B.A.P. 9th Cir. 2019) ("The express waiver doctrine applies to the psychotherapist-patient privilege."). As one opinion colorfully puts it, the "ship has sailed," in terms of protecting a patient's expectation of privacy in these communications, "once a patient knows that a given communication can be disclosed to third parties." *United States v. Deleon*, 323 F. Supp. 3d 1273, 1280 n.5 (D.N.M. 2018). Express waiver occurs (among other circumstances) when a party "explicitly authorized disclosure to" a government attorney "in connection with [a] civil lawsuit." *United States v. Clarke*, No. 04-CR-SRU, 2005 WL 2645003, at *3 (D. Conn. July 19, 2005).

There appears to be broad consensus among the Circuits that waiver occurs where the holder "knowingly and voluntarily relinquish[es]" the privilege. *United States v. Bolander*, 722 F.3d 199, 223 (4th Cir. 2013), *cert. denied*, 571 U.S. 1003(2013); *see also United States v. Lara*, 850 F.3d 686, 690 (4th Cir. 2017) (same); *United States v. Hayes*, 227 F.3d 578, 586 (6th Cir. 2000) (same). Even those Circuits—including the Second Circuit—that have not expressly

adopted this standard appear to embrace it implicitly. *See, e.g.*, *United States v. Ghane*, 673 F.3d 771, 787 (8th Cir. 2012) (assuming waiver should be knowing and voluntary); *In re Sims*, 534 F.3d 117, 136 (2d Cir. 2008) (focusing analysis on whether the privilege holder "made a knowing election to waive his psychotherapist-patient privilege"); *Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 10 (1st Cir. 1997) (looking to whether waiver in the context of an Americans with Disabilities Act claim was knowing and voluntary); *United States v. Wimberly*, 60 F.3d 281, 285 (7th Cir. 1995) (recognizing that privilege did not apply where, even assuming it applied, it had knowingly and voluntarily been waived); *see also United States v. Babarinde*, 126 F. Supp. 3d 22, 25 (D.D.C. 2015) (explaining waiver occurs where it is knowingly and voluntarily relinquished).

Among other circumstances, express waiver has been found where a party "sign[ed] an authorization [form] to release medical information in response to [an opponent's] applicable discovery request." *Tavares v. Lawrence & Mem'l Hosp.*, No. 11-CV-770, 2012 WL 4321961, at *2 (D. Conn. Sept. 20, 2012) (alteration adopted); *see also id.* at *4 ("Courts have held that waiver may be effectuated upon written consent . . . ."); *Bashinski v. United States*, No. 23-CV-1026, 2024 WL 239102, at *4 (S.D. Cal. Jan. 22, 2024) (noting that where the pro se plaintiff had "agree[d] to release his mental health records, affirmatively waiving any psychotherapist-patient privilege over them," that consent "acts as an express waiver of any privilege over his mental health records"); *Clarke*, 2005 WL 2645003, at *3 (finding express waiver where the defendant "explicitly authorized disclosure" of the treatment records to the government in connection with another civil lawsuit, and did "not offer[] anything that would dispute the validity of that waiver"); *cf. Ostler v. Harris*, No. 18-CV-254, 2019 WL 6879337, at *2 (D. Utah

Dec. 17, 2019) (finding no express waiver occurred where the plaintiff "did not sign a waiver in any of her records").

Implied waiver occurs, generally speaking, "where a plaintiff places his medical condition directly at issue in the litigation" through his own affirmative action. *Gabriel*, 2014 WL 3378629, at *2 (collecting cases); *see also In re Jakubaitis*, 604 B.R. at 574. In the Second Circuit, however, implied waiver of the privilege is "narrow," *Gabriel*, 2014 WL 3378629, at *2, encompassing "circumstances where it is called for in the interests of fairness," such as "when a party attempts to use the privilege as both a shield and a sword," *In re Sims*, 534 F.3d at 132 (quotation marks omitted). Accordingly, waiver applies "if a party relies on a mental or emotional condition as an element of [a] claim or defense," *Smith v. Dodge*, 2025 WL 3265193, at *7 (N.D.N.Y. Nov. 24, 2025), *appeal denied*, No. 18-CV-1066, 2026 WL 1256291 (N.D.N.Y. May 7, 2026), *reconsideration denied*, No. 18-CV-1066, 2026 WL 1601778 (N.D.N.Y. June 4, 2026), and specifically in circumstances where the plaintiff's claim extends beyond more than a "garden variety" emotional distress claim, *In re Sims*, 534 F.3d at 141, such that it seeks compensation for "serious psychological injuries," *Kunstler v. City of New York*, No. 04-CV-1145, 2006 WL 2516625, at *7 (S.D.N.Y. Aug. 29, 2006) (collecting cases). Even where the privilege has been implicitly waived, a plaintiff may withdraw or formally abandon such claims to avoid forfeiting the privilege. *Bright v. Annucci*, No. 18-CV-11111, 2026 WL 1396652, at *3–4 (S.D.N.Y. May 18, 2026) (concluding implied waiver remained valid where the plaintiff failed to take affirmative actions to withdraw or formally abandon claims constituting more than "garden variety" emotional distress); *Gabriel*, 2014 WL 3378629, at *3 (explaining that this abandonment would protect "as-yet-undisclosed" materials). Where express waiver has occurred, courts generally need not reach the issue of implied waiver. *Clarke*, 2005 WL

2645003, at *3 n.8 (declining to reach implied waiver where a party had expressly waived privilege).

It is undisputed that Plaintiff signed a medical release form. (*Compare* Pl.'s Mem. 2 *with* Def.'s Opp'n 2.) Unfortunately, Plaintiff does not advance any argument regarding the doctrine of express waiver. (*See generally* Pl.'s Mem.) He mentions that he was proceeding pro se at the time of the signature, that he "was not advised of his psychotherapist-patient privilege," or the "consequences of waiving that privilege" over the records, and that he would not have signed the release if he had understood the consequences of signing. (*Id.* at 2.) While Plaintiff is not entitled to any liberal construction now that he is represented, read generously these assertions could be taken to support a conclusion that his express release was not knowing and voluntary. (*See id.*) The gravamen of his motion, however, focuses on implied waiver—he argues that the rule expounded in *In re Sims*, that a plaintiff who disavows any claim for distress beyond "garden variety" emotional damages may avoid implicit waiver of his psychotherapist-patient privilege, also applies to the doctrine of express waiver. (*Id.* at 11.)

If Plaintiff expressly waived his privilege, then any implied waiver is beside the point. Accordingly, and with the Second Circuit's dicta from *In re Sims* pertaining to voluntariness in mind, *In re Sims*, 534 F.3d at 136 (affirming and noting that "nothing . . . suggests [the privilege holder] made a knowing election to waive his psychotherapist-patient privilege"), the Court evaluates whether Plaintiff has demonstrated any basis for concluding that this express waiver was not knowing or voluntary. The relevant facts, as demonstrated by the exhibits attached to the Parties' filings, are:

Plaintiff executed a form authorizing the release of his mental health information, which is dated May 16, 2023. (Crowley Decl., Ex. A, at 2.)[2] The release specified that it would not expire until "completion of the *Gunn v. Milani* . . . litigation, including any appeal." (*Id.* (emphasis added)) The release also provided several disclosures, including that the signer (Plaintiff) understood that "[t]his information is confidential and cannot legally be disclosed without my permission," that he "d[id] not have to sign th[e] authorization," and that any "refusal to sign w[ould] not affect [his] abilit[y] to obtain treatment from the New York State Office of Mental Health." (*Id.* at 1.) The form was explicit that the materials were being disclosed for discovery purposes in the civil litigation. (*Id.* at 1–2.) Plaintiff asserts that, because he was "unrepresented by counsel at the time [he] signed th[e] release," he "did not understand that [he] was waiving [his] psychotherapist-patient privilege by doing so." (Fenn Decl., Ex. 3, ¶ 6.) He offers no other basis, besides failure to "underst[an]d the legal consequences of signing the release" while proceeding *pro se*, that could support the conclusion that his waiver was unknowing or involuntary. (*Id.* ¶ 7.)

Cases outside the Second Circuit have held that, where a Plaintiff willingly signs a document that bears these types of disclosures, he has knowingly and voluntarily waived his psychotherapist-patient privilege. For instance, in *United States v. Lara*, 850 F.3d 686, 691 (4th Cir. 2017), the Fourth Circuit held that a party who "signed [a] form" related to his being placed on probation in state court proceedings that permitted his "providers to have 'unrestricted communication'" regarding any disclosures that might be deemed necessary to protect the

---

[2] The Court notes that there is a blank field for a witness statement or signature on the form, which appears never to have been filled. (Crowley Decl., Ex. A, at 2.) However, no Party suggests that this is a basis upon which the release could be invalidated. (*See generally* Pl.'s Mem.; Def.'s Opp'n.)

community, and where the party expressly signed that form indicating his agreement to the terms, had waived the privilege. So too here: Plaintiff, without limitation, authorized the disclosure of his mental health treatment records as part of the discovery in this Action. (Crowley Decl., Ex. A, at 2.) That constituted express waiver. *See Lara*, 850 F.3d at 691; *cf. Consolidated Edison Co. of N.Y. v. United States*, 221 F.3d 364, 371 (2d Cir. 2000) ("In general, individuals are charged with knowledge of the contents of documents they sign" and "a person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms." (quotation marks omitted)); *Hawke v. ADK Aquatics LLC*, No. 25-CV-441, 2026 WL 538931, at *6 (N.D.N.Y. Feb. 26, 2026) (explaining that where an "agreement's terms are presented in a clear and conspicuous way," that "called attention to the main effect of assenting to the agreement's terms[]," the "[p]laintiff [was] on inquiry notice of these terms," and the plaintiff's "signature would appear to have manifested her agreement with them"). Nor do the circumstances indicate that the fact that Plaintiff was sent this form as part of discovery somehow undermines the validity of consent or support the conclusion that the sending of the form was too coercive to make Plaintiff's consent voluntary. Indeed, in *Lara* the negative consequences of refusal to sign the form—that the party would have faced "additional imprisonment" absent agreement—were significantly more coercive than any circumstances facing Plaintiff here, and the party's consent was nevertheless deemed voluntary. *Lara*, 850 F.3d at 691. Nor does Plaintiff point to any circumstances that support the conclusion that the extent of the potential use of the disclosed materials was not disclosed to Plaintiff. *Contra United States v. Ghane*, 673 F.3d 771, 786–87 (8th Cir. 2012) (explaining that where a treating provider did not "inform [a privilege holder] that should [the privilege holder] consent to . . . disclosure, [his] statements m[ight] be used against him in a subsequent" proceeding, and therefore did not

provide the "patient with an explanation of the consequences of [the] waiver," the privilege holder did not "knowingly or voluntarily waive[] his rights") (quotation marks and citation omitted); *cf. Mitchell v. Sturm, Ruger & Co.*, 842 F. Supp. 158, 160 (E.D. Pa. 1994) (concluding that where notes had been knowingly and voluntarily disclosed to third party expert, privilege had been waived).

Resisting the conclusion that he waived his privilege, Gunn declares that he "was unrepresented by counsel at the time [he] signed th[e] release, and . . . did not understand that [he] was waiving [his] psychotherapist-patient privilege by doing so"; if he had understood the "consequences of signing the release," he claims, he "would not have done so." (Fenn Decl., Ex. 3, ¶ 6.) But the form that he signed expressly informed him that the information sought "was confidential and [could not] legally be disclosed without [his] permission." (Crowley Decl., Ex. A, at 1.) Moreover, the form informed him that the information would be used for the litigation. (*Id.*) Plaintiff does not explain what led him to his earlier, erroneous conclusion, and, as already explained, he is charged with knowledge of the plain language of the documents he signs. *Cf. Caraballo v. City of New York*, No. 24-2051, 2025 WL 1430152, at *3 (2d Cir. May 19, 2025) (summary order) ("Especially given that [the plaintiff] was *pro se* in reviewing and signing the General Release, we fully understand that he might not have *actually* understood it to cover his pending federal claims. Nonetheless, New York law proscribes such considerations.") (emphasis in original); *see also Frohn v. Globe Life and Accident Ins. Co.*, 99 F.4th 882, 890 (6th Cir. 2024) ("Karen voluntarily waived Greg's physician-patient privilege by signing the Authorization for Release. That document notified Karen that the information disclosed would include Greg's 'entire medical record'. . . . [T]he fact that Karen had to decide between unattractive choices does not invalidate the waiver.") (internal quotation marks and citation

omitted, alteration adopted)). Nor is this a context where Plaintiff turned over a large tranche of unprivileged material that erroneously contained some privileged items: he was releasing his medical records which, presumably, would contain overwhelmingly privileged materials—as the release form informed him. *See United States v. Ray*, No. 20-CR-110, 2022 WL 842254, at *4 (S.D.N.Y. Mar. 20, 2022) (noting that, where a privilege-holder "turned over a thousand files to [a] filmmaker" and erroneously included eight privileged audio recordings as part of a disclosure of seventy audio files, the court did not view the facts to "suggest a conscious or even reckless decision to turn over privileged materials" and therefore holding that there had been no implied waiver).

Finally, while Plaintiff hangs his hat almost entirely on his status as a pro se litigant at the time he executed the waiver, it bears noting that Plaintiff is not a pro se rookie. He has filed approximately over 10 lawsuits, including others in this District (some of which directly involved Plaintiff's psychological conditions). *See generally Gunn v. Bill*, No. 20-CV-1787, 2024 WL 4335627 (S.D.N.Y. Sept. 27, 2024) (bringing claims, in case that ultimately went to trial, based on alleged retaliation for filing grievances leading to anxiety, depression, paranoia, and permanent psychological harm); *Gunn v. Annucci*, No. 20-CV-2004, 2021 WL 1699949 (S.D.N.Y. Apr. 29, 2021) (bringing claims based on exposure to cold temperatures while incarcerated); *Gunn v. Ayala*, No. 20-CV-840, 2021 WL 5647795 (S.D.N.Y. Dec. 1, 2021) (bringing retaliation claims related to the filing of grievances, in a case that ultimately went to trial); *Gunn v. Aquafredda*, No. 19-CV-10039, 2021 WL 3115488 (S.D.N.Y. July 21, 2021) (bringing claims related to alleged assault and lack of medical care); *Gunn v. Doe*, No. 20-CV-730, 2020 WL 1140746 (S.D.N.Y. Mar. 6, 2020) (bringing claims related to access to legal mail); *Gunn v. Bentivegna*, No. 20-CV-253, 2020 WL 882336 (S.D.N.Y. Feb. 21, 2020)

(bringing claims alleging that Plaintiff was not prescribed a supplement drink as treatment for his depression, anxiety, post traumatic stress disorder, and paranoia); *Gunn v. Doe*, No. 19-CV-10383, 2020 WL 353240 (S.D.N.Y. Jan. 17, 2020) (bringing claims, asserted on premise that Plaintiff suffered (inter alia) depression, paranoia, and anxiety due to comments made by x-ray technicians). Such experience is relevant, as the Second Circuit has observed that, while pro se plaintiffs who are incarcerated receive "special solicitude," the "degree of solicitude may be lessened when the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (italics omitted); *see also id.* at 101 ("Somewhat unsurprisingly, . . . district courts within this Circuit have developed a practice of withdrawing this solicitude if a pro se litigant is deemed to have become generally experienced in litigation through participation in a large number of previous legal actions."); *Eady v. Lappin*, No. 05-CV-824, 2007 WL 1531879, at *4 (N.D.N.Y. May 22, 2007) ("[P]ermitting experienced pro se litigants to retain their special status (despite their litigation experience) would tilt the scales of justice unfairly in favor of the pro se litigant and against his opponents."). To be clear, the Court is not wholly withdrawing the special solicitude to which Plaintiff is entitled as a pro se litigant at the time he released his medical records, but his status as an *experienced* pro se litigant is relevant to the question of waiver.

So far as the record shows, Plaintiff knowingly and voluntarily waived the privilege as to his medical records. Given that Plaintiff executed an express waiver, the Court need not consider whether he also implicitly waived the right. Accordingly, the only question that remains is whether Plaintiff can now retract that waiver and reassert a privacy interest in the information.

2. Retraction of Waiver

The Court has been unable to find—and the Parties do not cite—any cases addressing an attempt to retract an express waiver of the psychotherapist-patient privilege. (*See generally* Pl.'s Mem.) However, there do exist a handful of decisions addressing the question whether a plaintiff who had been proceeding *pro se* and inadvertently disclosed attorney-client privileged information may retract that waiver. As the two privileges are analyzed under similar frameworks and protect similar public goods, and as the Supreme Court relied on the attorney-client privilege in establishing the psychotherapist-patient privilege, the Court determines that this framework should apply in this context, too. *See Jaffee*, 518 U.S. at 10–11 (explaining that "[l]ike the . . . attorney-client privilege[], the psychotherapist-patient privilege is rooted in the imperative need for confidence and trust" and noting that the two privileges served analogous public ends); *Simuro v. Shedd*, No. 13-CV-30, 2014 WL 5776149, at *3 n.3 (D. Vt. Nov. 6, 2014) ("[T]he patient-psychotherapist privilege operates in a similar way to, and serves a similar purpose as, the attorney-client privilege."); *Ray*, 2022 WL 842254, at *3 ("Similar principles [to those applied in the attorney-client privilege context] apply to the psychotherapist-patient privilege.").

In the attorney-client privilege context, courts have held that "[t]o the extent that" a privilege holder, even one who was proceeding pro se, "realizes" at a later date and with the benefit of counsel, "that she may have made a mistake in choosing to" produce privileged materials, "such after-the-fact regrets do not alter the analysis regarding whether she waived the privilege." *Hollis*, 2013 WL 2896860, at *3; *see also Riva v. Ficco*, No. 01-CV-12061, 2014 WL 4165364, at *25–26 (D. Mass. Aug. 21, 2014) (concluding that express waiver of the attorney-client privilege was materially different from implied waiver, that express waiver

wholly "destroyed the attorney-client privilege," and that therefore it would be appropriate to permit an opposing party to rely on materials that, although they had once been privileged, had been subject to express waiver), *aff'd*, 803 F.3d 77 (1st Cir. 2015). Similarly, there is no "authority for the proposition that strategic errors" relating to privilege "committed by a party while proceeding *pro se* may be corrected *nunc pro tunc* after the party has obtained counsel to advise them on what, in retrospect, may have been an unwise course of action" even if the formerly-pro se party "did not know or fully understand the nature of the privilege or know that she was waiving it." *Hollis*, 2013 WL 2896860, at *3; *see also Ime Watchdog, Inc. v. Gelardi*, No. 22-CV-1032, 2025 WL 2439242, at *4 (E.D.N.Y. Aug. 25, 2025) (denying request to strike privileged materials that party, while proceeding *pro se*, had disclosed to the court). Rather, if "the actions in [waiving the privilege as to the] previously privileged information . . . were intentional," the waiver was likely "knowing," and a court "does not assess whether the waiving party understood the . . . privilege on a deep level." *Hollis*, 2013 WL 2896860, at *3; *cf. Curry v. New York City Police Dep't*, 726 F. Supp. 2d 273, 275 (S.D.N.Y. 2010) ("In essence, the basis for his application is nothing more than that he changed his mind, a case of buyer's remorse. That ground has been repeatedly rejected by the courts as insufficient to authorize withdrawal of a stipulation of settlement, even for a pro se litigant.").[3] As Plaintiff's sole argument is that he did not understand the privilege on a deep level, and was unaware of the legal implications of his choice, these precedents strongly suggest that he cannot now retract his earlier, express waiver.

---

[3] Nor does this framework analysis appear limited to the attorney-client privilege context. In the context of the privilege against self-incrimination, for instance, the Second Circuit held that where a privilege holder "knowingly waived his privilege against self-incrimination" by "submitt[ing] financial questionnaires" to a grand jury, he could not "cry halt because the inquiry had gone into greater depth than he had anticipated." *U. S. ex rel. Carthan v. Sheriff, City of New York*, 330 F.2d 100, 102 (2d Cir. 1964).

The caselaw addressing the psychotherapist-patient privilege, however, does not suggest a contrary result. To the extent that Plaintiff attempts to argue that he can rely on the same maneuver used in *In re Sims* to withdraw an express waiver, he is mistaken. In *Sims*, the Second Circuit analyzed only *implicit* waivers, which can be avoided through disclaimer of more than garden-variety damages; the Court distinguished earlier cases that involved "knowing waive[r] [of the] privilege," which "could not [be] withdraw[n]" and the facts of *Sims*, where "nothing in the record . . . suggest[ed] that [the privilege holder] made a knowing election to waive his psychotherapist-patient privilege." *In re Sims*, 534 F.3d at 136. Reliance on *Sims* is not persuasive where a plaintiff knowingly and intentionally waived his right to withhold privileged materials, as here. *See Heller v. City of New York*, No. 06-CV-2842, 2008 WL 2966187, at *1 (E.D.N.Y. Aug. 1, 2008) (rejecting argument, based on *Sims*, that although "plaintiff knowingly and intentionally forfeited the privilege," he could later, "by withdrawing his claim for emotional damages[,] . . . halt further discovery").[4] Further, counseled cases analyzing the psychotherapist-

---

[4] The Court has been able to find only two cases that might support Plaintiff's position, and each case is distinguishable.

The first is *Gunzinger v. John Lucas Tree Experts Co.*, No. 17-CV-125, 2017 WL 5340370 (D. Me. Nov. 12, 2017). In *Gunzinger*, the plaintiff designated his treating psychotherapist as "an expert witness, agreeing, without objection, to provide [the provider's] patient file and treatment notes from her work with him, providing the defendants with [the provider's] detailed letter summarizing her treatment of him, and answering questions at his deposition about his treatment with [the provider.]" *Id.* at *4. But although the defendants in that case argued that the above-described conduct constituted express waiver, the *Gunzinger* court rejected that argument, apparently concluding that the waiver was implied and could be retracted under the *Sims* framework. *Id.* at *4–7. In any event, the waiver in *Gunzinger* was both less plausibly knowing and voluntary than the waiver described here.

The second is *Koch v. Cox*, 489 F.3d 384 (D.C. Cir. 2007). In *Koch*, the plaintiff relied on a new regulation "issued by the Department of Health and Human Services pursuant to the Health Insurance Portability and Accountability Act (HIPAA), which permit[ted] revocation" based upon the terms of the relevant regulations. *Id.* at 386–87. The District of Columbia Circuit relied upon those terms to conclude that the waiver was revocable. *Id.* at 392.

patient privilege have not permitted counseled litigants to retract express waivers, even if they did not understand the effects of their actions at the time they executed the waiver. *See Belvin v. Electchester Mgmt., LLC*, 635 F. Supp. 3d 190, 198 (E.D.N.Y. 2022) (concluding, in case involving counseled party, that once "the evidence has been produced without any assertion of the psychotherapist-patient privilege, [the] [p]laintiffs cannot seek belated protection" by relying on another Federal Rule of Evidence to seek retraction thereof); *In re Grand Jury Investigation*, 114 F. Supp. 2d 1054, 1055–56 (D. Or. 2000) (rejecting argument by privilege holder that express waiver of privilege executed when holder "formally applied for disability benefits" was "not really a waiver of the privilege"). Nor has the Court been able to find, in any case involving a pro se litigant's express waiver of the psychotherapist-patient privilege, a suggestion that the litigant might avail himself of a similar maneuver to re-assert the relinquished privilege. *See, e.g.*, *Owens v. Del Toro*, No. 18-CV-1579, 2025 WL 592741, at *4 (S.D. Cal. Feb. 24, 2025) (*sua sponte* addressing applicability of the psychotherapist-patient privilege in case involving a pro se plaintiff, without considering or hinting that the plaintiff might be able to regain the benefit of that privilege); *Bashinski v. United States*, No. 23-CV-1026, 2024 WL 239102, at *4–5 (S.D. Cal. Jan. 22, 2024) (same).

## III. Conclusion

For the reasons set forth above, the Motion for a Protective Order is denied. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 83.

SO ORDERED.

Dated: September 28, 2026
White Plains, New York



KENNETH M. KARAS
United States District Judge